# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| BROOKSIDE GROUP, LLC, | : |
| | : Civil Action No.: |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : |
| CARIS HEALTHCARE, LP, | : |
| | : |
| Defendant. | : |

## PLAINTIFF'S COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, Brookside Group, LLC ("Brookside" or "Plaintiff"), and files this its Complaint against Defendant Caris Healthcare, LP ("Caris" or "Defendant") and shows this Court the following:

## JURISDICTION

1. This Court has subject matter jurisdiction over all claims asserted herein pursuant to 28 U.S.C §1332 in that the matter in controversy exceeds $75,000 and is between citizens of different States.

2. Venue is proper in this jurisdiction pursuant to 28 U.S.C §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## PARTIES

3. Plaintiff Brookside is a citizen of the state of Georgia. Brookside provides proprietary services to hospices and other health care providers by examining the hospices' pharmacy spending practices and renegotiating hospice contracts with pharmacy benefit managers.

4. Defendant Caris is a citizen of the state of Tennessee. Caris operates hospices throughout the United States.

5. Caris markets itself as "driven to provide world-class end of life care." Caris list its "Values" as "Compassion Accountability Respect Integrity and Service." See, http://carishealthcare.com/about-us/, accessed December 11, 2017.

6. Defendant may be served with the Summons and Complaint in this action by serving its registered agent for service of process, National Registered Agents, Inc., 800 South Gay Street, Suite 2021, Knoxville, Tennessee, 37929.

## OPERATIVE FACTS

7. In May of 2016 a representative of Brookside contacted Norman McCrae, then CEO of Caris Healthcare, to offer Brookside's services in negotiating better prices with an existing pharmacy benefit manager, HospiScript.

8.  After a number of communications between Brookside and Caris, on September 25, 2016 Brookside and Caris executed a Non-Disclosure Agreement.

9.  The Non-Disclosure Agreement provided, in part, that neither company would use or disclose any information it received from the other.

10. The Non-Disclosure Agreement prohibited Caris from using any confidential information in any communications with Caris' Pharmacy Benefit Manager, HospiScript, or with any prospective pharmacy benefit manager.

11. The Non-Disclosure Agreement defines confidential information as:

> Any information disclosed by one part to the other, either directly or indirectly in writing, orally, or by inspection of tangible or intangible objects, including without limitation documents, business plans, source code, software, documentation, financial analysis, marketing plans, customer names, customer list, [or] customer data.

12. The Non-Disclosure Agreement also stated that the party receiving confidential information "agrees not to use any Confidential Information for any purpose except to evaluate and engage in discussions concerning a potential business relationship between the parties thereto."

13. Contemporaneously with the execution of the Non-Disclosure Agreement, Brookside and Caris executed a Business Associate Agreement.

14. The Business Associate Agreement was for the purpose of ensuring compliance with the Health Insurance Portability and Accountability Act of 1996, ("HIPAA"), as the parties exchanged Personal Health Information.

15. In addition to the Non-Disclosure Agreement and the Business Associate Agreement, Brookside provided Caris with a Master Services Agreement and accompanying Statement of Work, which together set out the terms of the work that Brookside was to do on behalf of Caris.

16. The Statement of Work provided that Brookside would receive a fee of 35% (thirty-five percent) of savings and recoveries Caris received as a result of Brookside's work for a period of 36 (thirty-six) months.

17. In September and October of 2016, Caris provided Brookside with various data regarding its contract with HospiScript.

18. On October 5, 2016, Brookside received an email from Natalie Swider of HospiScript stating "I just heard that you are going to be working with Caris."

19. On October 6, 2016, Brookside had a telephone conference with HospiScript to obtain information regarding the Caris/HospiScript contract.

20. During the period from October 11 to October 17, 2016, Caris sent Brookside various invoices from HospiScript, so that Brookside could evaluate Caris's spending practices with HospiScript.

21. During the period from October 13 to October 20, 2016, Lance Copeland of Caris provided additional detailed information to Brookside, including census data, data regarding patient days, and monthly management and financial reports.

22. On October 26, 2016, Brookside had another telephone conference with HospiScript to obtain additional information on the Caris/HospiScript relationship.

23. In the course of its work for Caris, Brookside reviewed nine months of invoices and over 85,000 individual dispensing decisions, using proprietary information about HospiScript, other hospice pharmacy benefit managers, and its own databases regarding the industry.

24. On November 2, 2016, Brookside made an online presentation to representatives of Caris, including its CEO, Norman McCrae, providing a detailed analysis of how Caris could save hundreds of thousands of dollars by renegotiating its contract with HospiScript.

25.     The information provided to Caris on November 2, 2016 was proprietary intellectual property of Brookside covered by the Non-Disclosure Agreement that Brookside and Caris had executed.

26.     During the presentation, Norman McCrae was informed by a Brookside representative that Caris could not use this proprietary information without Brookside.

27.     On November 10, 2016, in a telephone conference with Brookside, Paul Saylor, an official of Caris, attempted to lower the fee Caris would pay to Brookside.

28.     On November 29, 2016, Caris' CEO, Norman McCrae, informed Brookside that Caris had been negotiating directly with HospiScript, using the information that Brookside had provided, stating: "Thank you for starting conversations—don't know where we will end up."

29.     In another communication on November 30, 2016, McCrae informed Brookside that "[e]xcuse my bluntness but there is no way we are paying you 30% of our contract for three years…"

30.     On December 20, 2016, Brookside and Caris had a telephone conference during which Caris asked for additional information, including sample reports and references.

31. During the December 20, 2016 conference, Caris indicated its intent to proceed with the proposed contractual relationship.

32. As a result of Caris's inducement, between December 21 and December 24, 2016, Brookside provided Caris the additional information that had been requested.

33. On January 12, 2017, Norman McCrae informed Brookside that Caris would not sign an agreement to pay Brookside for the services Brookside had rendered, and Brookside's proprietary information. As McCrae stated in an email to Brookside:

> "Although you are getting glowing references the Brookside customers all say they wish they didn't have to write Brookside a check every month. What we have learned is that there are other PBMs offering a pass through pricing model so transparency is creeping into the market. Yes you lead us to think in that direction but you called me. I didn't call Brookside asking for help. We don't know what we are going to do yet but I don't think we will sign anything for 3 years and 30 %."

## COUNT I
## BREACH OF NON-DISCLOSURE AGREEMENT

34. Plaintiff hereby re-alleges and incorporates by reference the allegations of Paragraphs 1 through 33 of this Complaint as if set forth verbatim.

35. By virtue of Defendant's execution of the Non-Disclosure Agreement, Caris agreed to hold the proprietary information of Brookside in confidence and not to utilize it for its own benefit.

36. To further its relationship with Caris, Brookside provided to Caris confidential and proprietary information, relying on the expressed agreement of Caris not to disclose or use such information.

37. In complete and utter disregard for the expressed agreement not to use Brookside's confidential and proprietary information, Caris did in fact use such information and shared such with HospiScript.

38. The use of Brookside's confidential and proprietary information by Caris constituted a breach of the Non-Disclosure Agreement.

39. The use of Brookside's confidential and proprietary information by Caris in breach of the Non-Disclosure Agreement damaged Brookside in the sum of not less than $840,000.

## COUNT II
## UNJUST ENRICHMENT

40. Plaintiff hereby re-alleges and incorporates by reference the allegations of Paragraphs 1 through 38 of this Complaint as if set forth verbatim.

41. Brookside shared with Caris confidential and proprietary information relying on the expressed promise of Caris, through the execution of the Non-Disclosure Agreement by Caris' CEO, to keep such information confidential and not to disclose such information to others. That information included proprietary information that contained conclusions that Caris could and would be entitled to significant cost savings on its purchase of pharmaceuticals from HospiScript.

42. Caris used the confidential and proprietary information of Brookside and disclosed it to HospiScript without Brookside's permission, and in doing so obtained the benefit of Brookside's work and confidential and proprietary information.

43. Despite a demand from Brookside, Caris refuses to compensate Brookside for its information.

44. Upon information and belief, Caris used Brookside's information and obtained the benefit of Brookside's work and information, which resulted and will result in significant cost savings to Caris in the approximate amount of not less than $840,000.

45. Brookside's work resulting in the confidential and proprietary information was valuable, was provided to Caris, and Caris accepted the work.

46.  At all times, Caris knew the information being provided by Brookside was intended by Brookside to result in Brookside being compensated by Caris.

47.  Even though Caris' CEO refused to execute the Statement of Work, Brookside and Caris knew Brookside was seeking compensation for its confidential and proprietary information.

48.  Caris is and was unjustly enriched when it used Brookside's confidential and proprietary information in re-negotiating its contract with HospiScript.

49.  The reasonable value of the confidential and proprietary information is an amount equal to the cost savings that Brookside would have obtained from HospiScript for Caris over a three-year term.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Award Plaintiff damages in the amount of not less than $840,000, plus prejudgment interest;

B.  Award Plaintiff all costs and expenses of this litigation, including attorneys' fees; and

C.  Grant such other and further relief as this Court deems necessary based upon the facts and circumstances of this case.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues so triable.

This 8th day of March, 2018.

                                            */s/ David J. Worley*
                                            David J. Worley
                                            Georgia Bar No. 776665
                                            James M. Evangelista
                                            Georgia Bar No.  707807
                                            Kristi Stahnke McGregor
                                            Georgia Bar No. 674012
                                            EVANGELISTA WORLEY, LLC
                                            8100A Roswell Road
                                            Suite 100
                                            Atlanta, GA 30350
                                            Tel: (404) 205-8400
                                            Facsimile: (404) 205-8395
                                            david@ewlawllc.com
                                            jim@ewlawllc.com
                                            kristi@ewlawllc.com

                                            Louis G. McBryan
                                            Georgia Bar No. 480993
                                            McBRYAN, LLC
                                            1380 West Paces Ferry Road
                                            Suite 1150
                                            Atlanta, GA  30327
                                            Phone: (678) 733-9322
                                            Fax:(678) 498-2709
                                            lmcbryan@mcbryanlaw.com

                                            *Counsel for Plaintiff*