**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| BROOKSIDE GROUP, LLC | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | )   Case No. 1:18-cv-1005-AT |
| | ) |
| CARIS HEALTHCARE, LP, | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT CARIS HEALTHCARE, LP'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN SUPPORT OF ITS OPPOSITION TO BROOKSIDE'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendant Caris Healthcare, LP ("Caris") submits the following Reply to Plaintiff Brookside Group, LLC's ("Brookside") Response to Caris's Statement of Additional Material Facts in support of its Opposition to Brookside's Motion for Summary Judgment.

**Caris Healthcare LP – Background Information**

1.      In 2003, Norman McRae started Caris, a company that provides hospice services to individuals.  Between 2003 and 2016, Mr. McRae was the President and Chief Executive Officer for Caris.  (Exhibit 1 to Defendant's Motion for Summary Judgment ("DMSJ"), McRae Depo. at 19:6-22, 20:23-21:14, 25:23-26:3, 135:20-23.)

1

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

2.     Paul Saylor has been an officer for Caris since 2004.  In 2016, Mr. Saylor was the Chief Operating Officer for Caris and was in the process of transitioning to the title of President of Caris.  Mr. Saylor became the President of Caris in 2017.  (Exhibit 7 to DMSJ, Saylor Depo. at 19:9-20:12, 49:4-25.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

3.     At all relevant times, Bonita Ledgerwood was the Vice-President of Patient Care for Caris.  (Exhibit 6 to DMSJ, Ledgerwood Depo. at 14:22-15:1.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

**The Relationship Between Caris and Optum**

4.     At all relevant times, Lance Copeland was an Account Manager for Caris.  (Exhibit 40 to DMSJ, Copeland Depo. at 8:25-9:5.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

5.     Caris purchases pharmaceutical drugs that will be used for the hospice patients' care.  (Exhibit 41 to DMSJ, McRae Dec. ¶ 2.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

6.      Because Caris purchases drugs for patients at high volumes, Caris engages a pharmacy benefits manager ("PBM") to negotiate large volume pharmacy drug discounts.  Caris pays the PBM for this service.  (Exhibit 41 to DMSJ, McRae Dec. ¶ 2.)

**Plaintiff's Response:** Undisputed, but the undated McRae declaration does not support the second sentence of this fact.

**Defendant's Reply:** This fact is undisputed.

7.      Beginning in 2006, a predecessor of Optum Hospice Pharmacy Services, LLC ("Optum") became Caris's PBM.  Between 2006 and the present, Optum, or one of its predecessors, has been Caris's PBM.  (Exhibit 41 to DMSJ, McRae Dec. ¶ 3.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

8.      Before 2016, Optum had regular conversations with Caris regarding its utilization and pharmacy spend, as Caris had always been looking to reduce its costs. (Exhibit 2 to DMSJ, Guay Depo. at 62:20-63:21, 64:18-66:22, 96:13-17; Exhibit 8 to DMSJ, Kimbrel Depo. at 28:1-20, 36:22-38:4, 50:1-9.)

**Plaintiff's Response:** Plaintiff disputes paragraph 8 of Defendant's Statement of Undisputed Material Facts. Optum's primary client contact to Caris, Lauri Guay, specifically testified that she had no conversation with Caris regarding costs by changing pricing methodology. (Question: Did you have any discussions with them in the period between late 2014 and October 2016 about changing their price platform? Answer: Not that I recall). Guay Depo. at 66:21-24.

**Defendant's Reply:** This fact is undisputed.  Laurie Guay testified that she regularly discussed with Caris their contract, pricing, discounts Caris received, projections, pharmacy, and utilization. (Exhibit 2[1], Guay Depo. at 64:18-66:22; *see also* Exhibit 2, Guay Depo. at 72:6-10 ("So [Caris is] always concerned about pricing. That's what [Optum does] for them, is we monitor their pricing, and we provide to them a lot of clinical support and monitored and measured initiatives around their drug utilization.").)  Brookside does not raise a material dispute with respect to Statement 8 because Caris does not mention discussions regarding "changing their price platform" in this statement.  The Court should reject Brookside's attempt to insert additional allegations into its response.  *See Brown v. Hancock*, No. 1:07-CV-1416, 2009 WL 10668309, at *7 n.15 (N.D. Ga. Jan. 27, 2009), *report and*

---

[1] Exhibits 1-74 cited in Defendant's Reply to Additional Statement of Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment are the same exhibits cited in Doc. 114, Doc. 124, Doc. 125, and Doc. 136.

*recommendation adopted*, No. 1:07-CV-1416-TCB, 2009 WL 10670922 (N.D. Ga. Feb. 18, 2009) (disregarding non-movant's additions to the asserted fact that were "immaterial and [did] not controvert" that fact).

9.     During discussions between Optum and Caris concerning a 2014 agreement between them, Optum suggested a "pass-through" pricing agreement. (Exhibit 2 to DMSJ, Guay Depo. at 30:18-31:1, 43:6-16, 72:24-73:23.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

10.     Pass-through pricing has never been a secret, proprietary, or confidential pricing model.  The pass-through model is well known in the hospice industry.  (Exhibit 8 to DMSJ, Kimbrel Depo. at 180:11-25.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

11.     In 2014, Caris signed an agreement with Optum (the "2014 Agreement").  (Exhibit 2 to DMSJ, Guay Depo. at 21:5-13, 121:3-15.)  By that time, Optum, or one of its predecessors, had been Caris's PBM for 7 or 8 years.  (Exhibit 41 to DMSJ, McRae Dec. ¶ 3.)  The 2014 Agreement did not include "pass-through" pricing although Optum had suggested a "pass through" pricing model for the 2014 Agreement.  (Exhibit 2 to DMSJ, Guay Depo. at 31:9-25, 43:8-12, 44:1-25.)

**Plaintiff's Response:** Undisputed but this is not a material fact.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it describes Caris and Optum's relationship, describes the agreement that was in place between Caris and Optum when Brookside contacted Caris, and provides context regarding Caris and Optum's conversations related to the 2014 agreement both before and after Brookside contacted Caris.

12.    The 2014 Agreement was confidential between Caris and Optum. (Exhibit 2 to DMSJ, Guay Depo. at 21:5-13, 105:12-18.)

**Plaintiff's Response:** Undisputed but this is not a material fact.

**Defendant's Reply:** This fact is undisputed. Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows Brookside has unclean hands and shared confidential information with a third party in violation of the NDA.

**Optum's Employees in the Caris Relationship**

13.    At all relevant times, Laurie Guay has been an employee for Optum or one of its predecessors.  As an Optum employee, Ms. Guay interacted with Caris with respect to the business relationship between Caris and Optum.  (Exhibit 2 to DMSJ, Guay Depo. at 19:4-16, 20:11-22.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

14.     At all relevant times, Jason Kimbrel has been an employee for Optum or one of its predecessors.  As an Optum employee, Mr. Kimbrel interacted with Caris with respect to the business relationship between Caris and Optum.  (Exhibit 8 to DMSJ, Kimbrel Depo. at 19:3-20, 40:4-15.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

15.     At all relevant times, Natalie Swider has been an employee for Optum or one of its predecessors.  As an Optum employee, Ms. Swider worked on the Caris account for Optum.  (Exhibit 9 to DMSJ, Deposition of Natalie Swider, "Swider Depo." at 9:14-16, 15:19-24.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

16.     In 2016 and 2017, Brookside did not have any employees.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 9:18-10:12)

**Plaintiff's Response:** Undisputed, but this is not a material fact.

**Defendant's Reply:** This fact is undisputed. Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows

Brookside has unclean hands and shared confidential information with non-employee ST Health Group Consulting, in violation of the NDA.

**May 2016 – Brookside Offers Caris "Free Consulting"**

17.    On or around May 22, 2016, Peter Benjamin, claiming to represent Brookside, sent an email to Mr. McRae. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████ (Exhibit 3 to DMSJ, P. Benjamin Depo. at 11:15-12:3, 16:22-17:17; Exhibit 10 to DMSJ, at PB-BROOK000001.)  Peter Benjamin never informed Caris that he was not an employee or owner of Brookside.  (Exhibit 41 to DMSJ, McRae Dec. ¶ 5.)

**Plaintiff's Response:** Plaintiff disputes paragraph 17. First, Caris's use and practice of adding to its "fact" adjectives and adverbs diminish and call into question whether such a fact exists. Second, McRae does not testify that Peter Benjamin ever told him that he, Peter, was an employee of Brookside. Exhibit 41, McRae Dec. ¶ 5. McRae's Declaration states: "I do not recall Peter Benjamin ever telling me that he was not an employee or owner of Brookside." ¶ 5. Third, See Declaration of Peter Benjamin ¶ 6, attached to Plaintiff's Response to Defendant Caris Healthcare, LP's Statement of Undisputed Material Facts, filed August 31, 2020, a copy of which is attached hereto and incorporated herein as Exhibit B, in which Benjamin states that he did tell McCrae he was not an employee of Brookside.

**Defendant's Reply:** It is undisputed that Peter Benjamin sent this email to Norman McRae on or around May 22, 2016 and that Peter Benjamin stated he "█████████

███████████████████████████████████████████

███████████████████████████████████████ (Exhibit  10,  at  PB-

BROOK000001.)  Brookside's purported objections are irrelevant because it cannot be disputed that Peter Benjamin sent this email to Norman McRae, that Peter Benjamin sent this email on behalf of Brookside, and that Peter Benjamin was not an employee or owner of Brookside.

18.    On August 23, 2016, Peter Benjamin sent Mr. McRae an email.  The email stated, in part, the following: "Just being a good sales guy and checking in with you . . . As we discussed, us doing the analysis for you is a great piece of 'free consulting work' whatever you decide to do moving forward . . . I look forward to hearing from you . . . ." (Exhibit 14 to DMSJ, at PB-BROOK000043.)

**Plaintiff's Response:** Undisputed but the quoted portion of the email is not a material fact.

**Defendant's Reply:** This fact is undisputed. Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows that Brookside (1) offered free consulting work to Caris and (2) represented that Caris was not required to enter into an agreement with Brookside after Brookside presented its free consulting work.

19.    On September 14, 2016, Peter Benjamin sent Mr. McRae an email.  The email stated, in part, the following: "Just checking in . . . . Hey; free consulting – when did you EVER think you would hear me pitch that??? Your worst case is that

you spend maybe an hour and we spend a bunch of hours and come back and tell you that your pricing is great . . . Best case: without much effort you save money without any operational change in the day to day . . . Thoughts?" (Exhibit 15 to DMSJ, at PB-BROOK000044.)

**Plaintiff's Response:** Undisputed but the quoted portion of the email is not a material fact.

**Defendant's Reply:** This fact is undisputed. Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows that Brookside repeatedly offered free consulting work to Caris and represented that Caris was not required to enter into an agreement with Brookside after Brookside presented its free consulting work.

**September 2016 – Caris Accepts Brookside's Offer of Free Consulting**

20.    On September 15, 2016, Mr. McRae sent Peter Benjamin an email accepting the free consulting offer from Brookside.  (Exhibit 16 to DMSJ, at CARIS007544.)

**Plaintiff's Response:** Plaintiff disputes paragraph 20 of Defendant's Statement of Additional Undisputed Material Facts. Defendant's Material Fact is unsupported by the citations to the record. McRae's email cited states only: " ████████████ ██████████████████████████████████████████ " Thus, it is not

"accepting the free consulting offer from Brookside."

**Defendant's Reply:** In response to Brookside's repeated offers of free consulting work, Mr. McRae asked "what are the next steps." Brookside responded, in part, that the "next step is a reasonably brief call with [his] brother [James Benjamin] who will walk [Caris] through the literal steps of getting [James]/his partners the data they need **to do the analysis (including a NDA, etc.)**." (Exhibit 17 at PB-BROOK000045.) Thus, Brookside clearly understood that by asking "what are the next steps," Caris was accepting Brookside's offer for free consulting. (*Id*.) Brookside cannot now dispute that Caris was accepting Brookside's offer for free consulting when the evidence shows that Brookside understood Mr. McRae's email.

**September – October 2016 – Caris and Brookside Sign the NDA and Caris Sends its Confidential Information to Brookside for the Free Consulting**

21.     In September 2016, Brookside informed Caris that Brookside needed to review the 2014 Agreement, Caris's dispense data, Caris's census data, and Caris's invoices in order to perform the free consulting work. (Exhibit 18 to DMSJ, at JB-BROOK00074; Exhibit 4 to DMSJ, J. Benjamin Depo. at 28:1-25, 40:11-16.)

**Plaintiff's Response:** Plaintiff disputes paragraph 21 of Defendant's Statement of Additional Undisputed Material Facts. Defendant's Fact is unsupported by the citations to the record. The words "free consulting work" do not exist in the email

cited by Caris's counsel. The email from Jim Benjamin to Norman McRae states

that: "███████████████████████████████████████████████

████████████████████████████████████████████████" There

is no mention of the phrase, "free consulting work" in the particular email cited from

Jim Benjamin. September 22, 2016 email, at JB-BROOK00074; J. Benjamin Depo.

at 28:1-25, 40:11-16.

**Defendant's Reply:** This fact is undisputed.  Brookside's objection is unfounded as

it cannot dispute that the email exchanges between Brookside and Caris occurred in

August and September 2016.  (*See* Exhibit 14 at PB-BROOK000043; Exhibit 15 at

PB-BROOK000044; Exhibit 16 at CARIS007544; Exhibit 17 at PB-

BROOK000045.)  Brookside repeatedly offered free consulting work to Caris in

August and September 2016.  (Exhibit 10 at PB-BROOK000001; Exhibit 14 at PB-

BROOK000043; Exhibit 15 at PB-BROOK000044.)  When asked about the "next

steps" to proceed with the free consulting, Brookside responded that it would set up

a call to walk through the steps of getting that data "necessary to do the analysis."

(Exhibit 16 at CARIS007544; Exhibit 17 at PB-BROOK000045.)  Brookside then

requested the data outlined in its September 22, 2016 email.  (Exhibit 18 at JB-

BROOK00074.)  As such, it is clear that Brookside requested to review the 2014

Agreement, Caris's dispense data, Caris's census data, and Caris's invoices in order

to perform the free consulting work.

22.     In September 2016, Caris and Brookside signed a contract that included a non-disclosure agreement ("NDA.")  (Exhibit 1 to DMSJ, McRae Depo. at 51:17-52:6; Exhibit 19 to DMSJ, at CARIS000138-39.)

**Plaintiff's Response:** Plaintiff disputes paragraph 22 because Defendant mischaracterizes the NDA. The Non-Disclosure Agreement was a contract. It was titled "Non-Disclosure Agreement" and therefore was not a contract "that included a non-disclosure agreement."

**Defendant's Reply:** This fact is undisputed.  Brookside does not dispute that the parties signed the agreement, nor does Brookside dispute the contents of the agreement.  The agreement that Caris and Brookside signed is described as a "non-disclosure agreement" and includes paragraphs governing the definition and disclosure of "confidential information."  (Exhibit 19 at CARIS000138, ¶¶ 1-3.) However, the agreement also includes paragraphs governing the parties' relationship, including paragraphs titled: "No Obligation," "No Warranty," and "Remedies."  (*Id*. at CARIS000139, ¶¶ 4, 5, and 9.)  Thus, Caris did not mischaracterize the agreement by stating it included a non-disclosure agreement.

23.     In September 2016, Caris and Brookside signed a Business Associate Agreement ("BAA".)  (Exhibit 1 to DMSJ, McRae Depo. at 57:8-23; Exhibit 20 to

DMSJ, at CARIS000068-78.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

24.     In September 2016, Caris sent the 2014 Agreement to Brookside. (Exhibit 21 to DMSJ, at JB-BROOK00111; Exhibit 3 to DMSJ, P. Benjamin Depo. at 20:17-21, 35:3-36:3; Exhibit 4 to DMSJ, J. Benjamin Depo. at 28:11-19.)

**Plaintiff's Response:** Plaintiff admits paragraph 24 if by "Agreement" Defendant is referring to the 2014 Agreement between Caris and Optum.

**Defendant's Reply:** This fact is undisputed. The "2014 Agreement" is defined as the 2014 agreement between Caris and Optum.

25.     In October 2016, Caris sent its Optum invoices to Brookside.  (Exhibit 22 to DMSJ, at JB-BROOK00156; Exhibit 3 to DMSJ, P. Benjamin Depo. at 20:22-25; Exhibit 4 to DMSJ, J. Benjamin Depo. at 28:14-15, 47:16-25.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

26.     In October 2016, with Caris's permission, Optum sent Caris's dispense data to Brookside.  (Exhibit 2 to DMSJ, Guay Depo. at 56:1-57:13; Exhibit 23 to DMSJ, at CARIS000267; *see also* Exhibit 3 to DMSJ, P. Benjamin Depo. at 21:1-5; Exhibit 4 to DMSJ, J. Benjamin Depo. at 28:16-17, 41:17-42:11.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

27.     In October 2016, Caris sent its census data to Brookside.  (Exhibit 24 to DMSJ at JB-BROOK00914; Exhibit 3 to DMSJ, P. Benjamin Depo. at 21:6-12; Exhibit 4 to DMSJ, J. Benjamin Depo. at 28:18-19, 47:16-25.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

28.     Brookside knew the invoices, census data, dispense data, and the 2014 Agreement were Caris's confidential information that was not known to anyone other than Caris and Optum.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 35:23-36:3.)

**Plaintiff's Response:** Plaintiff disputes paragraph 28 as it is unsupported by the citations to the record. Brookside considered the information it received from Caris to be confidential. J. Benjamin Dep. At 35:23-36:3.

**Defendant's Reply:** This fact is undisputed. Brookside's objection to the record citation is unfounded, as James Benjamin's deposition testimony does support this statement.  Specifically, when asked about the NDA, James Benjamin testified that the NDA "mutually obligates us [Caris and Brookside] to the same thing . . . [Caris] can't use our data; [Brookside] can't use [Caris's] data . . . We are obligated to not use anything that is confidential and proprietary to Caris . . . ."  (Exhibit 4, J.

16

Benjamin Depo. at 35: 12-20.)  When asked, "What, if anything, did Brookside receive from Caris that was confidential and proprietary?", James Benjamin responded, "We received their monthly dashboard for nine months of 2016.  We received dispense data specific to them.  We received invoices, and we received their agreement with Hospiscript, I believe, at the time."  (Exhibit 4. J. Benjamin Depo. at 35:23-26:3.)  In his testimony, James Benjamin describes what he knew to be confidential information that Brookside received from Caris.  And by understanding that this information was Caris's confidential information, Brookside understood that it was not known to anyone other than Caris and Optum.  (*See* Exhibit 19 at CARIS000138.)  Moreover, Brookside fails to present any evidence in the record to dispute this fact.

**October 2016 – Brookside Breaches the NDA by Sending Caris's Confidential Information to a Third-Party Without Caris's Knowledge**

29.    In September and October 2016, Brookside sent Caris's invoices, census data, dispense data, and the 2014 Agreement to a third party, ST Health Group Consulting ("ST").  (Exhibit 25 to DMSJ, at JB-BROOK00130; Exhibit 26 to DMSJ, at JB-BROOK00434-438; Exhibit 27 to DMSJ, at JB-BROOK00922; Exhibit 3 to DMSJ, P. Benjamin Depo. at 21:13-21; Exhibit 4 to DMSJ, J. Benjamin Depo. at 42:12-15, 44:20-47:19.)

**Plaintiff's Response:** Plaintiff disputes paragraph 29 because ST is not a third party but is an agent of Brookside. Brookside has a partnership with ST. J Benjamin Dep. 15:4-14:35.

**Defendant's Reply:** This fact is undisputed.  First, Brookside does not dispute that it shared Caris's invoices, census data, dispense data, and the 2014 Agreement with ST.  Second, Brookside's purported objection to describing ST as a third party is an improper attempt to insert additional allegations into its response, which the court should reject.  *See Brown*, 2009 WL 10668309, at *7 n.15.  Brookside cites to James Benjamin's testimony, a non-lawyer, to argue that ST is an agent of Brookside and that Brookside has a "partnership" with ST.  However, Brookside has failed to present any evidence that establishes an actual agency or partnership relationship existed under Georgia law.  *See Barrs v. Acree*, 302 Ga. App. 521, 534-25 (2010) ("Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." (internal citations and quotations omitted)); *Clark v. Schwartz,* 210 Ga. App. 678, 679 (1993) ("A partnership is an association of two or more persons to carry on as co-owners a business for profit," which results from a contract (quoting OCGA § 14–8–6(a)).  The undisputed facts show that ST is not an employee of Brookside and not governed by the NDA; therefore, ST is a third party.

(Exhibit 4, J. Benjamin Depo. at 9:12-10:12, 14:16-24, 15:4-20.)

30.    ST has never been a signatory to any of the agreements between Caris and Brookside.  (Exhibit 19 to DMSJ, at CARIS000139; Exhibit 20 to DMSJ, at CARIS000078.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

31.    ST has never been an employee or owner of Brookside. (Exhibit 4 to DMSJ, J. Benjamin Depo. at 9:12-10:12, 14:16-24, 15:4-20.)

**Plaintiff's Response:** Plaintiff admits paragraph 31 but this fact is not material. ST was however, at all times relevant, in partnership with Brookside with regard to Caris. J. Benjamin Dep. 15:4-14. Plaintiff notes that an entity cannot be an employee.

**Defendant's Reply:** This fact is undisputed. Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows Brookside has unclean hands and shared confidential information with a third party in violation of the NDA.  As stated in Caris's Reply to Statement 29, Brookside has failed to present any evidence that establishes an actual agency or partnership relationship existed between Brookside and ST under Georgia law.  The undisputed facts show that ST is not an employee of Brookside; therefore, ST is a third party. (Exhibit 4, J. Benjamin Depo. at 9:12-10:12, 14:16-24, 15:4-20.); *see Clark,* 210 Ga.

App. at 679.  Caris notes that Josh Mundy and David Wertz are also not employees or owners of Brookside.  (Exhibit 4, J. Benjamin Depo. at 9:12-10:12, 14:16-24, 15:4-20.)

32.    Brookside has never been an employee or owner of ST.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 9:12-10:12, 14:16-24, 15:4-20.)

**Plaintiff's Response:** Plaintiff admits paragraph 32 but this fact is not material. Brookside was however, at all times relevant, in partnership with ST with regard to Caris. J Benjamin Dep. 15:4-14. Plaintiff notes that an entity cannot be an employee.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows Brookside has unclean hands and shared confidential information with a third party in violation of the NDA.  As stated above, Brookside has failed to present any evidence that establishes an actual agency or partnership relationship existed between Brookside and ST under Georgia law.  The undisputed facts show that ST is not an employee of Brookside; therefore, ST is a third party.  (Exhibit 4, J. Benjamin Depo. at 9:12-10:12, 14:16-24, 15:4-20.)  Caris further notes that Josh Mundy and David Wertz are also not employees or owners of Brookside.  (Exhibit 4, J. Benjamin Depo. at 9:12-10:12, 14:16-24, 15:4-20.)

33.    Brookside and ST have never had overlapping employees or owners.

(Exhibit 4 to DMSJ, J. Benjamin Depo. at 9:12-10:12, 14:16-24, 15:4-20.)

**Plaintiff's Response:** Plaintiff disputes paragraph 33 as it assumes a factual conclusion unsupported by the citations to the record. The deposition cited does not include any questions or answers of overlap between Brookside Group and ST.

**Defendant's Reply:** This fact is undisputed.   James Benjamin testified that Brookside had only two members – James Benjamin and Robert Paulsson – and no other employees.  (Exhibit 4, J. Benjamin Depo. at 9:18-23, 10:10-12.)  And James Benjamin and Robert Paulsson did not work for and did not own ST.  (*See id.* at 8:12-9:13; Doc. 116, Deposition of Robert Paulsson, at 7:3-8:7.)   Thus, it is impossible for Brookside and ST to have ever had overlapping employees or owners.

34.    Brookside never told Caris that it had planned to share, and actually shared, Caris's invoices, census data, dispense data, and the 2014 Agreement with ST.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 49:4-9.)

**Plaintiff's Response:** Plaintiff admits paragraph 34 but this fact is not material.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows Brookside has unclean hands and shared confidential information with a third party in violation of the NDA.

35.    Caris did not know that Brookside sent its invoices, census data,

dispense data, and the 2014 Agreement to ST until after Brookside initiated this litigation and Caris received documents in discovery related to ST.  (Exhibit 1 to DMSJ, McRae Depo. at 90:13-17, 91:2-4.)

**Plaintiff's Response:** Plaintiff admits paragraph 35 but this fact is not material.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows Brookside has unclean hands and shared confidential information with a third party in violation of the NDA.

36.     The information that ST reviewed included nine months of invoices and over 85,000 individual dispensing decisions.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 42:12-15, 44:20-47:19; Exhibit 29 to DMSJ, at JB-BROOK00968; Exhibit 30 to DMSJ, at JB-BROOK00982.)

**Plaintiff's Response:** Undisputed. However, Defendant's fact fails to include the fact that Brookside reviewed the material as well. 42:16-17.

**Defendant's Reply:** This fact is undisputed.  The Court should reject Brookside's attempt to insert additional allegations into its response.  *See Brown v. Hancock*, No. 1:07-CV-1416, 2009 WL 10668309, at *7 n.15 (N.D. Ga. Jan. 27, 2009), *report and recommendation adopted*, No. 1:07-CV-1416-TCB, 2009 WL 10670922 (N.D. Ga. Feb. 18, 2009) (disregarding non-movant's additions to the asserted fact that were

"immaterial and [did] not controvert" that fact).  Brookside attempts to point to its self-serving testimony to argue it reviewed the information, but the evidence shows that ST reviewed the information and created the charts that Brookside used in its presentation.  (*See and compare* Exhibit 29 at JB-BROOK00968; Exhibit 30 at JB-BROOK00982; Exhibit 32 at BROOK000026-28.)

**The Third Party, ST, Also Allegedly Receives Data From Publicly Available Databases**

37.    At all relevant times, Robert Paulsson was a member of Brookside. According to Brookside, ST received data available to the public from two subscription database companies, Cerner Multum and Wolters Kluwer Medi-Span. (Exhibit 5 to DMSJ, Paulsson Depo. at 57:12-58:17; Exhibit 28 to DMSJ, at p. 1; Exhibit 4 to DMSJ, J. Benjamin Depo. at 166:20-167:8; *see also* Exhibit 29 to DMSJ, at JB-BROOK00968.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

38.    According to Brookside, the data received from Cerner Multum and Wolters Kluwer Medi-Span is publicly available to anyone willing to pay the subscription fee for the information.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 166:20-167:5; Exhibit 5 to DMSJ, Paulsson Depo. at 58:6-13.)

**Plaintiff's Response:** Plaintiff disputes paragraph 38. This fact is unsupported by the citations to the record.

**Defendant's Reply:** This fact is undisputed.   James Benjamin testified that Brookside received information from "public" databases that are "fee-subscription-based access databases." (Exhibit 4, J. Benjamin Depo. at 166:16-167:4; *see also id*. at 17:3-11.) Though Brookside was unclear of the databases' names during their testimony, in response to Caris's Second Set of Interrogatories to Brookside, Brookside answered that the names of these subscription services are Cerner Multum and Wolters Kluwer Medi-Span. (Exhibit 28, Plaintiff's Response to Defendant's Second Set of Interrogatories, at Response to Interrogatory 1.) Thus, Brookside cannot dispute this fact.

39.     Brookside did not subscribe to the Cerner Multum or Wolters Kluwer Medi-Span databases before Brookside filed this lawsuit. (Exhibit 5 to DMSJ, Paulsson Depo.  at 58:8-23; Exhibit 4 to DMSJ, J. Benjamin Depo. at 17:3-11, 166:16-167:8.)

**Plaintiff's Response:** Undisputed but the fact is not material.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows that ST, and not Brookside, used publicly available information to complete its

"mathematical calculations."

40.     There are no documents stating that the information that Cerner Multum and Wolters Kluwer Medi-Span allegedly provided to ST was, or would become, ST or Brookside's confidential or proprietary information.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 17:3-11.)

**Plaintiff's Response:** Plaintiff disputes paragraph 40 because information cannot be "allegedly provided." In addition, the fact is that the information created by Brookside and conclusions reached by Brookside based on the analysis of other information obtained and used by Brookside is subject to the NDA. The Non-Disclosure Agreement defines confidential information as:



Exhibit A, ¶ 1 (emphasis added). It is undisputed that Caris executed the NDA. See Defendant Caris Additional Material Fact ¶ 22.

**Defendant's Reply:** This fact is undisputed.  Brookside cannot point to any document or testimony that states the information from Cerner Multum and Wolters

Kluwer Medi-Span was, or would become, ST or Brookside's confidential information.   The Court should reject Brookside's improper attempt to insert additional allegations into its response. *See Brown*, 2009 WL 10668309, at *7 n.15. Brookside does not cite to any evidence in the record to support its additional allegations and improperly implies that ST and ST's information is governed by the NDA.  As Brookside admitted, ST is not a signatory to the NDA.  (See Plaintiff's Response to Statement 35.)

41.    When asked if the data from the Cerner Multum and Wolters Kluwer Medi-Span databases is proprietary to Brookside, Brookside stated: "No."  (Exhibit 4 to DMSJ, J. Benjamin Depo.  at 17:9-11.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

**October 2016 – The Third Party, ST, Uses Public Information, Information from other Third-Parties and Basic Math to Create a Chart Comparing Caris's PBM Spend with the PBM Spend for Three of Brookside's Hospice Clients**

42.    On October 24, 2016, after Brookside sent Caris's Confidential Information to ST, ST sent an email to Brookside that included a chart that ST had allegedly created.  The chart compared the amount that Caris had paid to its PBM with the amount that three Brookside hospice clients (identified by name) had paid

to their respective PBMs. Caris never received this October 24, 2016 email before Brookside filed this lawsuit. (Exhibit 30 to DMSJ, at JB-BROOK00982.)

**Plaintiff's Response:** Plaintiff disputes paragraph 42 because a chart cannot be "allegedly created." In addition, whether ST created the chart, and whether Caris received the chart before the filing of this lawsuit are not material facts.

**Defendant's Reply:** The fact is undisputed. Brookside does not dispute the substance of the fact. Brookside's objection that the chart cannot be "allegedly created" is irrelevant. Caris used this term because it only has the email evidence showing that ST sent Brookside the chart, and it does not have testimony from ST that ST created this chart. Brookside cannot and does not dispute that ST sent the October 24, 2016 email to Brookside, which included this chart. Brookside also provides no justification for its objection to the materiality of the fact, which is material insofar as it shows (1) that ST, and not Brookside, used publicly available information to complete its "mathematical calculations," and (2) that Caris did not have access to the information that Brookside contends is "confidential information."

43. Brookside has not presented evidence revealing the existence of a confidentiality agreement between Brookside and ST concerning the information that the hospices sent to Brookside.

**Plaintiff's Response:** Plaintiff disputes and objects to this fact as the Court directed Brookside to produce such document per Docket No. 75 and Brookside did produce the Non-Disclosure Agreement executed by ST in favor of Brookside, as reflected in Docket No. 76, Brookside's certificate of compliance. A copy of the Non-Disclosure Agreement is attached hereto as Exhibit C.

**Defendant's Reply:** This fact is undisputed.  Brookside produced a document from 2013 that was not signed by Brookside, expired after two years, and its only purpose was "to evaluate and engage in discussion concerning a potential business relationship between" Brookside and ST.  (*See* Doc. 133-6 at ¶ 2.)  This agreement does not govern information that hospices sent to Brookside.

44.    There is no evidence of the existence of a confidentiality agreement between ST and the hospices identified in the October 24, 2016 email.

**Plaintiff's Response:** Plaintiff disputes and objects to this fact as inadmissible as speculation by the Defendant. Plaintiff further disputes this fact as unsupported by any citation to the record.

**Defendant's Reply:** This fact is undisputed.  Caris subpoenaed documents from ST, and ST did not produce any confidentiality agreements between ST and the hospices. Moreover, Brookside would be aware if these documents existed, as these hospices were Brookside's clients, and Brookside is responsible for sending the hospices'

information to ST.

45.     There are no documents stating that the information in the contracts, invoices, census information and dispense information for the other three hospices in the chart in the October 24, 2016 email became, or would become, Brookside's proprietary or confidential information.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 56:2-6.)

**Plaintiff's Response:** Plaintiff disputes and objects to this fact as mischaracterization of the testimony of Mr. Benjamin. There is no reference to proprietary or confidential information in the question by Caris's counsel or the answer by Mr. Benjamin. Additionally, Caris has chosen to ignore the NDA which it signed defining Confidential Information. Defendant's Additional Facts, paragraph 22.

**Defendant's Reply:** This fact is undisputed.  Brookside cannot point to any document or testimony that states the information from the other three hospices became, or would become, Brookside's confidential or proprietary information.  The evidence shows that this information was provided to Brookside by the other three hospices.  The Court should reject Brookside's improper attempt to insert additional allegations into its response. *See Brown*, 2009 WL 10668309, at *7 n.15.

46.     The three other hospices in the chart in the October 24, 2016 email were

not-for-profit hospices.   Peter Benjamin mentioned two of these hospices by their names and ADC numbers in his unsolicited May 22, 2016 email to Mr. McRae. (Exhibit 10 to DMSJ, at PB-BROOK000001; Exhibit 3 to DMSJ, P. Benjamin Depo. at 15:10-16:20; Exhibit 30 to DMSJ, at JB-BROOK00982.)

**Plaintiff's Response:** Undisputed, but this is not a material fact.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows that this information is not "confidential information."

47.    According to Peter Benjamin, a not-for-profit hospice's average daily census ("ADC") information is publicly available information.  (Exhibit 3 to DMSJ, P. Benjamin Depo. at 15:10-16:20.)

**Plaintiff's Response:** Plaintiff cannot admit nor deny paragraph 55 of Defendant's Statement of Undisputed Material Facts, as the "fact" implies Peter Benjamin is an industry expert speaking on practices for the entire industry, which has not been established.

**Defendant's Reply:** This fact is undisputed.  Peter Benjamin testified that he is aware that a not-for-profit hospices' information is publicly available information because "by virtue of their 501(c)(3) status," "every not-for-profit hospice has to file a 990, and . . . an annual report."  (Exhibit 3, P. Benjamin Depo. at 15:10-16:20.)

This fact does not require Peter Benjamin to be an industry expert, as he is not "speaking on practices for the entire industry."  Rather, he is speaking to the fact that he is aware that as a not-for-profit company, a hospice is required to file certain information in the public domain.

**October 2016 – Brookside Tells *Optum* That Optum's 2014 Agreement With Caris Is "Above Market" for Caris**

48.    After Brookside received the October 24, 2016 email from ST that included the chart comparing Brookside and three other hospices, James Benjamin of Brookside engaged in a conversation with Optum during which James Benjamin told Optum that the 2014 Agreement between Optum and Caris was "above market" in Brookside's opinion.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 77:11-78:14.)

**Plaintiff's Response:** Plaintiff admits paragraph 48 only as to Caris's contract is above market. Plaintiff disputes paragraph 48 as to the remaining part as being unsupported by the citation to the record by Defendant. In the record cited by Defendant there is no reference to ST nor any chart.

**Defendant's Reply:** This fact is undisputed.  The evidence in the record shows that this conversation occurred on or after October 25, 2016.  (Exhibit 4, J. Benjamin Depo. at 74:10-15, 77:13-19; *see also* Exhibit 31 at JB-BROOK00998.)    Thus, Brookside cannot dispute that this conversation occurred after ST sent Brookside the

October 24, 2016 email, which included a chart comparing Caris and three other hospices.  (*See* Exhibit 30 at JB-BROOK00982.)

**November 2016 – December 2016 – Brookside Presents the Chart that the Third Party, ST, Created to Caris As Its Own Work During Three Calls**

49.    On November 2, 2016, after Brookside told Optum that the 2014 Agreement was "above market" in Brookside's opinion, Brookside presented the results of the "free consulting" to Caris in a PowerPoint presentation via a WebEx. (Exhibit 4 to DMSJ, J. Benjamin Depo. at 88:12-89:11; Exhibit 32 to DMSJ, at BROOK000025-30.)

**Plaintiff's Response:** Plaintiff admits paragraph 49, and states further that any free consulting ended on November 2, 2016 and that thereafter, Caris was obligated to compensate Brookside if it used its information in any way. Even if the consulting to that date was "free" the ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

On November 2, 2016, Brookside gave an online presentation to representatives of Caris, including its CEO, Norman McRae, providing a detailed analysis of how Caris could save millions of dollars by renegotiating its contract with HospiScript. J. Benjamin Dep. at 18:3-16; 90:70-24. Further, during that presentation Jim Benjamin

reminded Caris that the information presented was the Confidential Information and the proprietary intellectual property of Brookside covered by the Non-Disclosure Agreement that Brookside and Caris had executed. J. Benjamin Dep. at 16:3-18; 18:3-16, 21:1-6.

**Defendant's Reply:** This fact is undisputed. Brookside uses its response as an opportunity to assert new allegations and arguments that should have been addressed in its brief.   The Court should reject Brookside's improper attempt to insert additional allegations and arguments into its response.   *See Brown*, 2009 WL 10668309, at *7 n.15.  Moreover, Brookside's allegations are not supported by any record citations and should be rejected.

First, Brookside's statement that it provided "a detailed analysis of how Caris could save millions of dollars by renegotiating its contract with HospiScript" is unsupported by the record citation and is a mischaracterization of the evidence. Specifically, the record citation indicates only that Brookside discussed wholesale actual cost, average wholesale price, the difference between wholesale actual cost and average wholesale price, and maximum allowable cost pricing with Caris during the November 2, 2016 online presentation.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 18:8-16.)  There is no mention of saving "millions of dollars by renegotiating" the 2014 Agreement.

Second,  Brookside's statement that "Jim Benjamin reminded Caris that the information presented was the Confidential Information and the proprietary intellectual property of Brookside covered by the Non-Disclosure Agreement that Brookside and Caris had executed" is unsupported by the record citation and a mischaracterization of the evidence.  Specifically, the record citation indicates only that James Benjamin told Mr. McRae that Brookside provides "valuable information" to potential clients "knowing that they can't use that information by virtue of our nondisclosure."  (Exhibit 71, Additional Excerpts from the J. Benjamin Depo. at 21:1-6.)  There is no mention of "Confidential Information" or "proprietary intellectual property."

50.    Caris representatives, Mr. McRae and Ms. Ledgerwood, were on the conference call and viewed the presentation via the WebEx.  (Exhibit 6 to DMSJ, Ledgerwood Depo. at 25:5-12; Exhibit 1 to DMSJ, McRae Depo. at 45:14-24, 85:18-86:8; Exhibit 7 to DMSJ, Saylor Depo. at 43:11-44:2.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

51.    During the November 2, 2016 WebEx presentation, Brookside flashed a PowerPoint slide deck on the screen.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 91:17-92:1, 111:2-112:11; *see* Exhibit 32 to DMSJ, at BROOK00027; *see also*

Exhibit 4 to DMSJ, J. Benjamin Depo. at 114:15-25; Exhibit 32 to DMSJ, at BROOK00028.)   Caris never had hard copies of the PowerPoint WebEx presentation, Caris never took pictures of the presentation, and Caris never memorized the presentation.  (Exhibit 41 to DMSJ, McRae Dec. ¶ 4; Exhibit 42 to DMSJ, Ledgerwood Dec. ¶ 4; *see also* Exhibit 1 to DMSJ, McRae Depo. at 86:2-8; Exhibit 7 to DMSJ, Saylor Depo. at 43:25-44:2.)

**Plaintiff's Response:** Plaintiff disputes paragraph 51 because it contains many "facts" that are not material, and the facts are not supported by the citation to the record by Defendant. First, the WebEx was not "flashed" on the screen but took place over one hour on November 2, 2016, during which Brookside gave an online presentation to representatives of Caris, including its CEO, Norman McRae, providing a detailed analysis of how Caris could save millions of dollars by renegotiating its contract with HospiScript. J. Benjamin Dep. at 18:3-16; 90:7-24. Second, **Caris *used the information provided by Brookside***[2] when Caris engaged in negotiations with Optum. On November 29, 2016, Norman McRae sent an email to Peter Benjamin. The email is contained in a string of emails, Exhibit G to Plaintiff's Motion for Partial Summary Judgment, Doc. 103-12 (CARIS045551 to 45554), and

---

[2] Plaintiff notes, yet again, Caris counsel's continued use of argument in its "facts". Therefore, Plaintiff is compelled to respond.

states:



(Emphasis added). After Peter Benjamin replied to this email, McCrae wrote again

on November 30, 2016, stating in part:



(Emphasis added). This email is also contained in Exhibit G.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it provides context regarding how Caris received Brookside's free analysis and shows that ST, not Brookside, prepared the information in the November 2, 2016 presentation. Brookside uses its response as an opportunity to assert irrelevant allegations and arguments that should be addressed in its brief.  To the extent Brookside objects to the term "flashed" in describing the presentation, Caris explains that this term is used because the presentation was not sent to Caris, and Caris was only viewing the presentation via a WebEx that was controlled by Brookside.  Brookside's statement that it provided "a detailed analysis of how Caris could save millions of dollars by renegotiating its contract with HospiScript" is unsupported by the record citation and a mischaracterization of the evidence.  Specifically, the record citation indicates only that Brookside discussed wholesale actual cost, average wholesale price, the difference between wholesale actual cost and average wholesale price, and maximum allowable cost pricing with Caris during the November 2, 2016 online presentation.  (Exhibit 4 to DMSJ, J. Benjamin Depo. at 18:8-16.)  There is no mention of saving "millions of dollars by renegotiating" the 2014 Agreement.

     As further explained in Caris's Reply in Support of its Motion for Summary

Judgment, Brookside's citation to November 30, 2016 email to support its argument is misplaced and is a mischaracterization of the evidence.  (Doc. 136 at p. 7.)  The email has nothing to do with the "use" or "sharing" of the free consulting that Brookside had presented to Caris on November 2, 2016.  The email stated that Caris did not want to hire Brookside to renegotiate the contract with Optum because Caris believed that Brookside was proposing to influence the utilization of NDC codes at the pharmacy level.  (Exhibit 52 at CARIS0001407.)  Optum informed Caris that influencing the utilization of NDC codes at the pharmacy level "is very difficult to do," and Caris was simply sharing Optum's statement with Brookside.  (*Id*.)

Brookside uses its response as an opportunity to assert irrelevant allegations and arguments that should be addressed in its brief.  The Court should also reject Brookside's improper attempt to insert additional allegations and arguments into its response.  *See Brown*, 2009 WL 10668309, at *7 n.15.

52.    Caris representatives did not understand or remember the information James Benjamin presented during the WebEx presentation.  (Exhibit 1 to DMSJ, McRae Depo. at 73:3-20.)

**Plaintiff's Response:** Plaintiff disputes paragraph 52 as this "fact" is an opinion that is self-serving and meant to create a "fact". Caris is not the entity that did not understand or remember the information; Norman McRae is that person. Further,

Plaintiff disputes this fact because McRae acknowledged that after participating in presentations provided by Brookside, he never "went to our vendor with anything other than Brookside says you got caught with your hands in the cookie jar. And if that's IP, then, yes, that's what happened." McRae Depo. at 114:5-8. And McRae took what he understood from Brookside's presentation about the problems with Caris's contract with Optum and contacted Optum to discuss Brookside's analysis. J. Benjamin Dep. at 19:13-6, 21:1-19 ("[…] and then told us a couple weeks later that he [McRae] was talking to Optum about pricing, that led me to believe that he shared our information with them."); McRae Dep. at 134:1 to 135:14. Further, on November 29, 2016, Norman McRae sent an email to Peter Benjamin. The email is contained in a string of emails, Exhibit G to Plaintiff's Motion for Partial Summary Judgment, [Doc. 103-12] (CARIS045551 to 45554), and states:



(Emphasis added). After Peter Benjamin replied to this email, McCrae wrote again on November 30, 2016, stating in part:



(Emphasis added). This email is also included in the string contained in Exhibit G.

**Defendant's Reply:** This fact is undisputed.  Brookside testified that Caris did not understand the information that Brookside provided to Caris and that Caris misstated this information.   (Exhibit 4, J. Benjamin Depo. at 41:23-42:1; Exhibit 71, Additional Excerpts from J. Benjamin Depo. at 142:4.)   Brookside cannot now dispute this fact and claim it is self-serving testimony.   In addition, repeating that Brookside believes that Optum has its hand in the cookie jar does not show that Caris understood Brookside's presentation when Brookside repeated this same statement

in an email to Caris.  (Exhibit 66 at PB-BROOK000150.)  As fully explained in Caris's Opposition to Brookside's Motion for Partial Summary Judgment, Caris conducted its own research in an effort to understand the industry and PBM contracts.  (Doc. 124 at p. 23.)  Caris did not take what it understood from Brookside's presentation and contact Optum to discuss Brookside's free analysis. Brookside cites to James Benjamin's self-serving testimony, which is clearly discredited by the evidence in the record.  James Benjamin testified that he knew Caris shared Brookside's analysis with Optum based on email communications from Caris to Brookside.  However, there is simply no email communication in the record to support James Benjamin's testimony.

As further explained in Caris's Reply in Support of its Motion for Summary Judgment, Brookside's citation to the November 30, 2016 email to support its argument is misplaced and is a mischaracterization of the evidence.  (Doc. 136 at p. 7.)  The email has nothing to do with the "use" or "sharing" of the free consulting that Brookside had presented to Caris on November 2, 2016.  The email stated that Caris did not want to hire Brookside to renegotiate the contract with Optum because Caris believed that Brookside was proposing to influence the utilization of NDC codes at the pharmacy level.  (Exhibit 52 at CARIS0001407.)  Optum informed Caris that influencing the utilization of NDC codes at the pharmacy level "is very difficult

to do" and Caris was simply sharing Optum's statement with Brookside.  (*Id*.)

53.    Caris's takeaway from the discussions with Brookside was that Brookside believed that Caris had a bad contract with Optum.  (Exhibit 1 to DMSJ, McRae Depo. at 114:11-12.)

**Plaintiff's Response:** Plaintiff admits paragraph 53, that Caris had a bad contract with Optum. However, based upon McRae's testimony, *he took away much more*, to wit: On November 29, 2016, Norman McRae sent an email to Peter Benjamin. The email is contained in a string of emails, Exhibit G to Plaintiff's Motion for Partial Summary Judgment, [Doc. 103-12] (CARIS045551 to 45554), and states:



(Emphasis added). After Peter Benjamin replied to this email, McCrae wrote again on November 30, 2016, stating in part:





(Emphasis added). This email is also contained in the email string in Exhibit G. McRae Depo. at 132, Exhibit 16.

**Defendant's Reply:** This fact is undisputed.  Brookside uses its response as an opportunity to assert irrelevant allegations and arguments that should be addressed in its brief.  The Court should reject Brookside's improper attempt to insert additional allegations and arguments into its response.  *See Brown*, 2009 WL 10668309, at *7 n.15.  Moreover, as fully explained in Caris's Reply in Support of its Motion for Summary Judgment, Brookside mischaracterizes the evidence.  (*See* Doc. 136 at p. 6-8.)

In addition, repeating that Brookside believes that Optum has its hand in the cookie jar does not show that Caris understood Brookside's presentation when

Brookside repeated this same statement in an email to Caris. (Exhibit 66 at PB-BROOK000150.) As fully explained in Caris's Opposition to Brookside's Motion for Partial Summary Judgment, Caris conducted its own research in an effort to understand the industry and PBM contracts. (Doc. 124 at p. 23.) Caris did not take what it understood from Brookside's presentation and contact Optum to discuss Brookside's free analysis. Brookside cites to James Benjamin's self-serving testimony, which is clearly discredited by the evidence in the record. James Benjamin testified that he knew Caris shared Brookside's analysis with Optum based on email communications from Caris to Brookside. However, there is simply no email communication in the record to support James Benjamin's testimony.

As further explained in Caris's Reply in Support of its Motion for Summary Judgment, Brookside's citation to the November 30, 2016 email to support its argument is misplaced and is a mischaracterization of the evidence. (Doc. 136 at p. 7.) The email has nothing to do with the "use" or "sharing" of the free consulting that Brookside had presented to Caris on November 2, 2016. The email stated that Caris did not want to hire Brookside to renegotiate the contract with Optum because Caris believed that Brookside was proposing to influence the utilization of NDC codes at the pharmacy level. (Exhibit 52 at CARIS0001407.) Optum informed Caris that influencing the utilization of NDC codes at the pharmacy level "is very difficult

to do," and Caris was simply sharing Optum's statement with Brookside. (*Id.*)

54.     On November 10, 2016, Brookside and Caris representative Paul Saylor had a separate call shortly after the November 2, 2016 WebEx presentation. (Exhibit 7 to DMSJ, Saylor Depo. at 59:1-13.)

**Plaintiff's Response:** Plaintiff admits several calls occurred between Saylor and Brookside representatives after November 2, 2016. J. Benjamin Depo. at 125:20 to 126:15; Saylor Depo. at 65:20 to 66:1; P. Benjamin Depo. at 42:15 to 42:25. On December 20, 2016, Jim Benjamin, McRae, Saylor and Ledgerwood had another telephone conference, during which specifics of how Brookside would save Caris money by renegotiating Caris's contract with Optum were discussed. Saylor Depo. at 137:22 to 140:4, Saylor Depo. at 138:5-6. On December 24, 2016, in an email addressed "All" Jim Benjamin wrote:



Saylor Depo. at 140:8-18. The email is attached to the Plaintiff's Motion for Partial Summary Judgment as to Liability (hereinafter "PMPSJ") [Doc. 103] as Exhibit I.

**Defendant's Reply:** This fact is undisputed. The Court should reject Brookside's

improper attempt to insert additional allegations and arguments into its response. *See Brown*, 2009 WL 10668309, at *7 n.15.

55.    Mr. Saylor's only takeaway from the call was that Caris had a "bad contract" with Optum.  (Exhibit 7 to DMSJ, Saylor Depo. at 61:3-9, 169:11-16.)

**Plaintiff's Response:** Plaintiff disputes paragraph 55, that this was Mr. Saylor's "only" takeaway, because Saylor also attempted to negotiate a lower fee due Brookside for its work. On November 10, 2016, in a telephone conference with Brookside, Paul Saylor, President of Caris, attempted to lower the fee Caris would pay to Brookside. J. Benjamin Dep. at 125:20 to 126:15; Saylor Dep. at 65:20 to 66:1; P. Benjamin at 42:15 to 42:25.

**Defendant's Reply:**  This fact is undisputed.  Brookside cannot point to any evidence in the record that disputes Mr. Saylor's takeaway from the meeting. Moreover, the record citations that Brookside cites are irrelevant to the fact in Statement 55 and should be rejected.  *See Brown*, 2009 WL 10668309, at *7 n.15.

56.    Brookside provided Caris with a draft Master Service Agreement. (Exhibit 1 to DMSJ, McRae Depo. at 116:22-117:23, 119:9-13; Exhibit 33 to DMSJ, at PB-BROOK000035-37; Exhibit 34 to DMSJ, at CARIS045648-50.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

57.   Caris and Brookside did not agree to or sign a Master Service Agreement.  (Exhibit 1 to DMSJ, McRae Depo. at 119:3-5; Exhibit 33 to DMSJ, at PB-BROOK000037.)

**Plaintiff's Response:** Plaintiff admits paragraph 57 only to the extent of admitting that Caris did not sign the Master Services Agreement.

**Defendant's Reply:** This fact is undisputed. Brookside's contention that Brookside did not have to sign or agree to the Master Services Agreement is unsupported by a record citation and a mischaracterization of the evidence.  Specifically, both parties were required to sign the Master Services Agreement.  (See Exhibit 33 at PB-BROOK000037.)

58.   Brookside provided Caris with a draft Statement of Work ("SOW"). (Exhibit 4 to DMSJ, J. Benjamin Depo. at 158:7-13; Exhibit 35 to DMSJ, at PB-BROOK000038-39; Exhibit 1 to DMSJ, McRae Depo. at 116:24-117:23; Exhibit 36 to DMSJ, at CARIS045646-47.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

59.   Caris and Brookside did not agree to or sign the SOW.  (Exhibit 1 to DMSJ, McRae Depo. at 61:19-62:3, 120:10-14; Exhibit 35 to DMSJ, at PB-BROOK000039.)

**Plaintiff's Response:** Plaintiff disputes paragraph 59. Brookside continued to do the work as outlined in the SOW even after Saylor had determined Caris would never sign the contract, a decision which he never communicated that to Brookside nor McRae. Saylor Depo. at 61:11-14; 74:5-25. After Saylor made that determination, he and McRae wanted to learn more from Brookside even after the "free consulting" Caris received on November 2, 2016. Saylor Depo. at 137:22 to 140, 138:5-6. Although Saylor has no recollection of who told him that Brookside's consulting was "free." Saylor Depo. at 67:2-19.

**Defendant's Reply:** This fact is undisputed.  Brookside does not object to Caris's record citations and does not present any evidence that disputes this fact or somehow establishes that Brookside and Caris did in fact agree and sign the SOW.  The Court should reject Brookside's improper attempt to insert additional allegations and arguments into its response.  *See Brown*, 2009 WL 10668309, at *7 n.15.  These allegations are irrelevant to the fact in Statement 59, unsupported by the record citations, and mischaracterize the evidence.  Specifically, there is no evidence in the record that supports Brookside's contention that "it continued to do work as outlined in the SOW."  In addition, as fully explained in Caris's Opposition to Brookside's Motion for Partial Summary Judgment, Caris only continued to speak with Brookside after the November 2, 2016 presentation because Brookside repeatedly

contacted Mr. McRae and requested to speak with Caris.  (Doc. 124 at 26-31.)

60.    After performing the free consulting for Caris, Brookside did not perform any of the services stated in Paragraph 1 of the SOW for Caris.  (Exhibit 35 to DMSJ, at PB-BROOK000038; Exhibit 4 to DMSJ, J. Benjamin Depo. at 104:18-105:2, 128:14-129:2, 158:9-159:25; Exhibit 41 to DMSJ, McRae Dec. ¶ 6.)

**Plaintiff's Response:** Plaintiff disputes paragraph 60. Brookside continued to do the work as outlined in the SOW even after Saylor determined Caris would never sign the contract, a decision which he never communicated to Brookside nor to McRae. After Saylor made that determination, he and McRae still wanted to learn more from Brookside after the "free consulting" it received on November 2, 2016. Saylor Depo: at 61:11-14, 137:22 to 140.

**Defendant's Reply:** This fact is undisputed.  Brookside does not object to Caris's record citations and does not present any evidence that disputes this fact. Indeed, there is no evidence in the record that supports Brookside's contention that "it continued to do work as outlined in the SOW."  The Court should also reject Brookside's improper attempt to insert additional allegations and arguments into its response.  *See Brown*, 2009 WL 10668309, at *7 n.15.  These allegations are irrelevant to the fact in Statement 60, unsupported by the record citations, and mischaracterize the evidence.  In addition, as fully explained in Caris's Opposition

to Brookside's Motion for Partial Summary Judgment, Caris only continued to speak with Brookside after the November 2, 2016 presentation because Brookside repeatedly contacted Mr. McRae and requested to speak with Caris.  (Doc. 124 at 26-31.)

61.    In an e-mail dated November 11, 2016, Brookside offered to perform the tasks stated in the Statement of Work in exchange for a different fee structure than the ▮▮▮▮▮▮▮▮  (Exhibit 47 to OPMPSJ, at PB-BROOK000074.)

**Plaintiff's Response:** Plaintiff admits Paragraph 61 only as there are references to a different fee structure but dispute the remainder of the statement in Paragraph 61 as being unsupported by the evidence cited.

**Defendant's Reply:** This fact is undisputed.

62.    Caris was not obligated to move forward with Brookside as a paid consultant after Brookside performed the free analysis.  (Exhibit 3 to DMSJ, P. Benjamin Depo. at 22:7-12; Exhibit 10 to DMSJ, at PB-BROOK000001; Exhibit 37 to DMSJ, at PB-BROOK000059; Exhibit 4 to DMSJ, J. Benjamin Depo. at 28:1-6.) Caris never engaged Brookside as a paid consultant.  (Exhibit 1 to DMSJ, McRae Depo. at 61:19-62:3.)

**Plaintiff's Response:** Plaintiff disputes Paragraph 62 as it is a legal conclusion and not a fact, material or not.

**Defendant's Reply:** This fact is undisputed.  Caris is not asserting a legal conclusion.  As shown by the record citations, Brookside repeatedly stated that Caris was not obligated to move forward with Brookside after Brookside performed its free analysis.  (Exhibit 3, P. Benjamin Depo. at 22:7-12; Exhibit 10 at PB-BROOK000001; Exhibit 37, P. Benjamin's October 24, 2016 email, at PB-BROOK000059; Exhibit 4, J. Benjamin Depo. at 28:1-6.)  The NDA the parties signed makes clear that the parties are under no obligation "to proceed with any transaction between them."  (Exhibit 19 at CARIS000138.)  And Brookside and Caris did not enter into the SOW or MSA.  Thus, Brookside cannot dispute that Statement 62 is an undisputed fact.

63.    Caris, through Mr. Saylor, performed its own research concerning PBM contracts on the internet so it could better understand its agreement with Optum and pricing models in the hospice industry.  (Exhibit 1 to DMSJ, McRae Depo. at 64:11-65:1, 131:10-132:12; Exhibit 7 to DMSJ, Saylor Depo. at 48:1-11, 87:1-16, 107:10-14, 121:1-6, 197:13-23.)

**Plaintiff's Response:** Plaintiff disputes paragraph 63 as this fact is unsupported by the evidence. Caris began "researching" after the November 2, 2016 presentation from Brookside, and at the specific direction of its CEO McRae. In an email dated November 30, 2016, **_after Brookside shared with Caris employees its analysis of_**

*how Caris could obtain significant cost savings*, Caris CEO McRae ███████

████████████████████████████████████████████████

McRae Dep. at 64:11-13 and 131:13-23, and email dated November 30, 2016 from McRae to Saylor and Ledgerwood attached to the PMPSJ as Exhibit M.  Further, the fact is not supported by record cited by Defendant. Saylor does not mention the "internet" on pages 48, 107, 121, 197 of his deposition. But while on page 87 Saylor does mention "online" he "cannot recall" what he looked at or researched. Saylor Dep. at 87:7-16. In fact, he had no recollection of who, how or what he "researched." Id. at 197:4 to 198:16.

**Defendant's Reply:** This fact is undisputed.  Mr. Saylor testified that he began to get involved and research Caris's PBM agreement in "Q4 of 2016" because he was transitioning to take over Mr. McRae's role as president and CEO.  (Exhibit 7, Saylor Depo. at 48:1-11.)  The fact that Mr. McRae encouraged Mr. Saylor and Ms. Ledgerwood to research PBM agreements in the industry after the November 2, 2016 presentation does not establish that Caris was not conducting research between October 2016 and March 2017.  Brookside's objection that the fact is not supported by the record citation because the deposition pages cited do not mention "internet" is disingenuous and mischaracterizes the record citation.  In support of Statement 63, Caris cited to Mr. Saylor's deposition testimony on page 48:1-11 where he states

that "it just took a look of investigative work and **research online**" to understand

what type of contract Caris had and how pricing worked.  (Exhibit 7, Saylor Depo.

at 48:1-8.)  Moreover, Mr. Saylor's inability to recall specifically what search terms

he used or what websites he reviewed during his research that he conducted almost

two years prior to his deposition does not establish that that Mr. Saylor did not

conduct research.  Brookside's objections do not create a dispute of fact and thus

should be rejected because the evidence in the record shows that Statement 63 is

undisputed.

64.     Before and after Brookside told Optum that the 2014 Agreement was

above market for Caris, Optum made suggestions on how Caris could reduce its

costs, and Optum educated Caris about pricing agreements and changes in the

industry.  (Exhibit 2 to DMSJ, Guay Depo. at 30:15-25, 32:9-17, 33:11-25, 47:1-16,

62:20-63:21, 67:21-69:1, 71:16-72:10; Exhibit 8 to DMSJ, Kimbrel Depo. at 41:23-

42:16; Exhibit 9 to DMSJ, Swider Depo. at 43:2-44:18.)  These discussions between

Caris and Optum were not new.  (Exhibit 2 to DMSJ, Guay Depo. at 64:18-65:22;

Exhibit 1 to DMSJ, McRae Depo. at 65:21-66-15.)  Before 2016, Optum had regular

conversations with Caris regarding its utilization and pharmacy spend, as Caris had

always been looking to reduce its costs.  (Exhibit 2 to DMSJ, Guay Depo. at 62:20-

63:21, 64:18-66:22, 96:13-17; Exhibit 8 to DMSJ, Kimbrel Depo. at 28:1-20, 36:22-

38:4, 50:1-9.)

**Plaintiff's Response:** Plaintiff admits that portion of paragraph 64 that states that Caris had discussions with representatives of Optum regarding utilization and pharmacy spend. Plaintiff disputes that portion of paragraph 64 that states that Optum discussed pricing with Caris from late 2014 to October 2016 prior to Brookside's involvement. Laurie Guay specifically testified she could not recall any conversations with Caris representatives regarding pricing on its contract from 2014 through 2016. Guay Depo. at 66:21-24.

**Defendant's Reply:** This fact is undisputed.  In its objection, Brookside points to Laurie Guay's testimony that she did not recall a conversation with Caris regarding "changing their price platform" between late 2014 and October 2016.  (Exhibit 2, Guay Depo. at 66:21-24.)  However, this objection does not raise a material dispute with respect to Statement 64 because Caris does not mention "changing their price platform" in this statement.  Laurie Guay testified that she regularly discussed with Caris their contract, pricing, discounts they're receiving, projections, pharmacy, and utilization. (Exhibit 2, Guay Depo. at 64:18-66:22; *see also* Exhibit 2, Guay Depo. at 72:6-10 ("So [Caris is] always concerned about pricing. That's what [Optum does] for them, is we monitor their pricing, and we provide to them a lot of clinical support and monitored and measured initiatives around their drug utilization.").)   Thus,

Brookside cannot dispute this fact.

65.    During the discussions between Caris and Optum, Optum suggested that Caris and Optum amend the 2014 Agreement and use a different pricing model called a "pass-through" agreement.  (Exhibit 2 to DMSJ, Guay Depo. at 30:18-31:4; Exhibit 8 to DMSJ, Kimbrel Depo. at 45:11-46:15, 47:1-48:5.)

**Plaintiff's Response:** Plaintiff disputes paragraph 65 as it mischaracterizes the testimony. First, the citation to the Kimbrel transcript is not relevant to this fact. Second, Caris, not Optum, initially suggested reopening the contract: McRae approached Laurie Guay at a January 9, 2017 meeting at Caris's offices and told her he wanted to be sure he had the best deal and that Optum did not have its hand in the cookie jar. Guay testified; "I had their annual business review, and they let me know that they were concerned about pricing and that they were talking to competitors ...." Guay Depo. 30: 18-24. Plaintiff admits that portion of paragraph 65 that states that Caris had discussions with representatives of Optum regarding the "pass through model" *but notes such discussion occurred after Brookside was engaged by Caris*. Jason Kimbrel testified that when speaking with McRae and Saylor "the only discussion specifically around MAC pricing would be that in a pass-through model MAC pricing would be applied." Kimbrel Depo. at 49:13-24. Plaintiff disputes that portion of paragraph 65 that would imply Caris and Optum were discussing pricing

after execution of the 2014 Agreement and prior to Brookside's involvement. Guay specifically testified she could not recall any conversations with Caris representatives regarding pricing on its contract from 2014 through October 2016. Guay Depo. at 66:21-24.

**Defendant's Reply:** This fact is undisputed.  At the time of the January 9, 2017 meeting that Laurie Guay had with Caris, Jason Kimbrel had already spoken to Caris regarding their concerns about changes in the industry.  (Exhibit 8, Kimbrel Depo. at 39:25-40:15, 41:18-42:16, 47:9-21.) In this conversation, Mr. Kimbrel presented Caris with options, which included putting Caris in a different pricing model than Caris's current agreement with Optum.  (*Id*. at 45:7-48:15.)

66.    Brookside was not a part of the conversations with Optum.  (Exhibit 41 to DMSJ, McRae Dec. at ¶ 6; *see* Exhibit 3 to DMSJ, P. Benjamin at 88:21-89:6, 117:10-16; Exhibit 4 to DMSJ, J. Benjamin Depo. at 24:10-14, 146:12-18.)

**Plaintiff's Response:** Plaintiff admits paragraph 66 but this fact is not material. Optum knew exactly what Brookside did for its hospice clients and Optum was told Brookside had been retained by Caris. Natalie Swider Depo. at 18:4 to 19:19; Carna Triftshauser Depo. at 19:10-24.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows that

Brookside has evidence regarding what Caris shared with Optum during its conversations.  The Court should also reject Brookside's improper attempt to insert additional allegations and arguments into its response.  *See Brown*, 2009 WL 10668309, at *7 n.15.  Brookside's additional allegation is irrelevant to the fact in Statement 66 and mischaracterizes the evidence in the record.  Specifically, several Optum employees who worked on the Caris account did not know what Brookside did as a consultant. (Exhibit 70, Excerpts from Kimbrel's Depo. at 30:17-31:6; Exhibit 73, Guay Depo. at 57:22-25.)

67.    Caris never wrote or said anything to Optum that was confidential Brookside information.  (Exhibit 1 to DMSJ, McRae Depo. at 114:5-8, 163:7-14; Exhibit 2 to DMSJ, Guay Depo. at 34:1-7, 47:9-15, 61:21-62:7, 79:21-80:1, 112:4-17, 122:1-9; Exhibit 8 to DMSJ, Kimbrel Depo. at 51:18-25, 64:1-65:10, 84:22-85:14, 179:8-180:6.)  The record is devoid of evidence revealing that Caris wrote or said anything to Optum that was confidential Brookside information.  (*Id*.)

**Plaintiff's Response:** Plaintiff disputes paragraph 67 as the fact is unsupported by the citations to the record. First, the citation to the Guay deposition does not support the statement. Further, Caris renegotiated the Optum contract using information that had been provided to it by Brookside: McRae testified that after participating in presentations provided by Brookside, he never "went to our vendor with anything

other than Brookside says you got caught with your hands in the cookie jar. And if that's IP, then, yes, that's what happened." McRae Dep. at 114:5-8. But McRae also advised Jim Benjamin that McRae contacted Optum to discuss Brookside's analysis. J. Benjamin Depo. at 19:13-6, 21:1-19 ("[…] and then told us a couple weeks later that he [McRae] was talking to Optum about pricing, that led me to believe that he shared our information with them."); McRae Depo. at 134:1 to 135:14. Also, in an email dated November 14, 2016, McRae wrote to Carna Triftshauser, an Optum employee, "████████████████████████████████████████ ████████████████████████████████████████ " The email is attached to this Response as Exhibit D (CARIS046243) (Ex. 2 to Triftshauser Depo.) In response to this email, Ms. Triftshauser sent out a calendar invitation for a conference call to McRae, Ledgerwood, Laurie Guay, Jason Kimbrel and Natalie Swider, and in the invitation was the phrase "this call is to discuss Brookside." This call was set up for November 16 at 4 p.m. Triftshauser Depo. 22:10-24; Ex. 3 (CARIS 046255), attached hereto as Exhibit E. Triftshauser testified that Jason Kimbrel was specifically invited to attend. *Id.*

Further, on November 29, 2016, Norman McRae informed Brookside in an email that Caris had been negotiating directly with HospiScript, using the information that Brookside had provided, stating: "██████████████████

██████████████████████████████ J. Benjamin Depo. at 19:10-17; 126:6-127:25; McRae Depo. at 132:15 to 133:18, 152:17 to 153:17. The email is attached to the PMPSJ as Exhibit G. After McRae advised Brookside it would ███

████████████████████████████████████████████████

████████████████████████████████ J. Benjamin Depo. at 150:1 to 152:10; Saylor Depo. at 137:22 to 139:1, including an email dated December 20, 2016 in which Saylor wrote to McRae and Ledgerwood referencing a call with Brookside scheduled for that day: "███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████"). The email is attached to the PMPSJ as Exhibit H. Then, on December 20, 2016, Jim Benjamin, McRae, Saylor and Ledgerwood had another telephone conference, during which specifics of how Brookside would save Caris money by renegotiating Caris's contract with Optum were discussed. J. Benjamin Depo. 150:11 to 152:10 Additionally, Optum knew what Brookside did for hospice clients, and Optum knew Brookside was hired by Caris. Swider Depo, at 18:4-19:19 Triftshauser Depo. at 19:10-24. On January 20, 2017 Laurie Guay of Optum emailed Paul Saylor:

████████████████████████████████████████



Saylor forward Guay's email to Norman McRae, telling him:



Within 30 minutes McRae responded:



Saylor Depo. at 189:19-25, Exhibit 20.

Plaintiff also disputes the conclusion and argument by Caris in the last sentence of Paragraph 67.

**Defendant's Reply:** This fact is undisputed. The record citation shows that Optum employees have never been provided confidential Brookside information. Brookside cites to evidence in the record that does not dispute this fact or establish that Caris did provide Optum with confidential Brookside information. Specifically, having a conversation with Optum about Brookside does not establish that Caris shared "confidential information" with Optum. At the time of this conversation, Optum was already aware of Brookside, and Brookside had already had communications with Optum.

In addition, repeating that Brookside believes that Optum has its hand in the cookie jar does not show that Caris shared confidential Brookside information with Optum.  As fully explained in Caris's Opposition to Brookside's Motion for Partial Summary Judgment, Brookside already provided this information to Optum and this opinion does not qualify as "confidential information" under the NDA.  (Doc. 124 at p. 34-36.)

Brookside also mischaracterizes Optum's knowledge and makes statements that are directly refuted by the evidence in the record.  Specifically, Brookside was never hired by Caris (Exhibit 1 to DMSJ, McRae Depo. at 61:19-62:3, 120:10-14; see Exhibit 35 to DMSJ, at PB-BROOK000039), several employees who worked on the Caris account did not know what Brookside did as a consultant, (Exhibit 70, Excerpts from Kimbrel's Depo. at 30:17-31:6; Exhibit 73, Guay Depo. at 57:22-25), and Optum did not know what Caris's engagement was with Brookside (Exhibit 73, Guay Depo. at 112:13-20.)  Moreover, Caris only continued to speak with Brookside after the November 2, 2016 presentation because Brookside repeatedly contacted Mr. McRae and requested to speak with Caris.  (Doc. 124 at 26-31.)

Brookside's response is merely an attempt to insert additional allegations and arguments into its response.  The Court should reject Brookside's improper attempt to insert additional allegations and arguments into its response.  *See Brown*, 2009

WL 10668309, at *7 n.15.

68.    Caris informed Optum that Brookside had stated that Optum's "hand was in the cookie jar," which Caris understood that statement to mean that Brookside believed that the 2014 Agreement was a bad contract for Caris.  (Exhibit 1 to DMSJ, McRae Depo. at 81:23-82:3, 114:11-24, 209:18-22.)  Optum, also understood the cookie jar statement to mean that Brookside believed that the 2014 Agreement was a bad contract for Caris.  (Exhibit 2 to DMSJ, Guay Depo. at 43:21-44:13.)

**Plaintiff's Response:** Plaintiff admits paragraph 68, that Caris had a bad contract with Optum. However, based upon McRae's testimony, *__he took away much more__*, to wit: On November 29, 2016, Norman McRae sent an email to Peter Benjamin. The email is contained in a string of emails, Exhibit G to Plaintiff's Motion for Partial Summary Judgment, [Doc. 103-12] (CARIS045551 to 45554), and states:



(Emphasis added). After Peter Benjamin replied to this email, McCrae wrote again on November 30, 2016, stating in part:



(Emphasis added). This email is also contained in the email string in Exhibit G. McRae Depo. at 132, Exhibit 16. Also, in an email dated November 14, 2016, McRae wrote to Carna Triftshauser, an Optum employee, "███████████████ ████████████████████████████████████████████ ████████████████" The email is attached to this Response as Exhibit D (CARIS046243) (Ex. 2 to Triftshauser Depo.) In response to this email, Ms. Triftshauser sent out a calendar invitation for a conference call to McRae, Ledgerwood, Laurie Guay, Jason Kimbrel and Natalie Swider, and in the invitation

was the phrase "this call is to discuss Brookside." This call was set up for November

16 at 4 p.m. Triftshauser Depo. 22:10-24; Ex. 3 (CARIS 046255), attached hereto as

Exhibit E. Triftshauser testified that Jason Kimbrel was specifically invited to attend.

*Id.*

**Defendant's Reply:** This fact is undisputed.  Brookside admits Statement 68 and

then Brookside improperly asserts additional allegations and arguments in its

response.  The Court should reject Brookside's improper attempt to insert additional

allegations and arguments into its response. *See Brown*, 2009 WL 10668309, at *7

n.15.  Moreover, Statement 68 does not mention Mr. McRae's or Caris's "take

away" from Brookside's November 2, 2016 presentation or any other conversations

with Brookside.  Brookside's additional statements are both irrelevant to Statement

68 and, as explained in Caris's Reply to Statement 67, a mischaracterization of the

evidence.

69.    Caris did not understand and could not articulate anything about

Brookside's oral statements other than Brookside's previously publicized belief that

the 2014 Agreement was a bad contract for Caris.  (Exhibit 1 to DMSJ, McRae Depo.

at 73:3-20, 114:11-12; Exhibit 7 to DMSJ, Saylor Depo. at 61:3-9, 169:11-16.)

**Plaintiff's Response:** Plaintiff disputes paragraph 69 as this "fact" is an opinion that

is self-serving and meant to create a "fact". Caris is not the entity that did not

understand or remember the information; Norman McRae is that person. Further, Plaintiff disputes this fact because McRae acknowledged that after participating in presentations provided by Brookside, he never "went to our vendor with anything other than Brookside says you got caught with your hands in the cookie jar. And if that's IP, then, yes, that's what happened." McRae Depo. at 114:5-8. And McRae took what he understood from Brookside's presentation about the problems with Caris's contract with Optum and contacted Optum to discuss Brookside's analysis. J. Benjamin Dep. at 19:13-6, 21:1-19 ("[...] and then told us a couple weeks later that he [McRae] was talking to Optum about pricing, that led me to believe that he shared our information with them."); McRae Dep. at 134:1 to 135:14. Further, on November 29, 2016, Norman McRae sent an email to Peter Benjamin. The email is contained in a string of emails, Exhibit G to Plaintiff's Motion for Partial Summary Judgment, [Doc. 103-12] (CARIS045551 to 45554), and states:



(Emphasis added). After Peter Benjamin replied to this email, McCrae wrote again

on November 30, 2016, stating in part:



(Emphasis added). This email is also included in the string contained in Exhibit G.

Also, in an email dated November 14, 2016, McRae wrote to Carna Triftshauser, an Optum employee, "█████████████████████████████████ █████████████████████████████████████████████████" The email is attached to this Response as Exhibit D (CARIS046243) (Ex. 2 to Triftshauser Depo.) In response to this email, Ms. Triftshauser sent out a calendar

invitation for a conference call to McRae, Ledgerwood, Laurie Guay, Jason Kimbrel and Natalie Swider, and in the invitation was the phrase "this call is to discuss Brookside." This call was set up for November 16 at 4 p.m. Triftshauser Depo. 22:10-24; Ex. 3 (CARIS 046255), attached hereto as Exhibit E. Triftshauser testified that Jason Kimbrel was specifically invited to attend. *Id.*

**Defendant's Reply:**  This fact is undisputed.  Brookside testified that Caris did not understand the information that Brookside provided to Caris and that Caris misstated this information.   (Exhibit 4, J. Benjamin Depo. at 41:23-42:1; Exhibit 71, Additional Excerpts from J. Benjamin Depo. at 142:4.)   Brookside cannot now dispute this fact and claim it is self-serving testimony.  In addition, repeating that Brookside believes that Optum has its hand in the cookie jar does not show that Caris understood Brookside's presentation when Brookside repeated this same statement in an email to Caris.  (Exhibit 66 at PB-BROOK000150.)  As fully explained in Caris's Opposition to Brookside's Motion for Partial Summary Judgment, Caris conducted its own research in an effort to understand the industry and PBM contracts.  (Doc. 124 at p. 23.)  Caris did not take what it understood from Brookside's presentation and contact Optum to discuss Brookside's free analysis. Brookside cites to James Benjamin's self-serving testimony, which is clearly discredited by the evidence in the record.  James Benjamin testified that he knew

Caris shared Brookside's analysis with Optum based on email communications from Caris to Brookside. However, there is simply no email communication in the record to support James Benjamin's testimony.

As further explained in Caris's Reply in Support of its Motion for Summary Judgment, Brookside's citation to the November 30, 2016 email to support its argument is misplaced and is a mischaracterization of the evidence. (Doc. 136 at p. 7.) The email has nothing to do with the "use" or "sharing" of the free consulting that Brookside had presented to Caris on November 2, 2016. The email stated that Caris did not want to hire Brookside to renegotiate the contract with Optum because Caris believed that Brookside was proposing to influence the utilization of NDC codes at the pharmacy level. (Exhibit 52 at CARIS0001407.) Optum informed Caris that influencing the utilization of NDC codes at the pharmacy level "is very difficult to do" and Caris was simply sharing Optum's statement with Brookside. (*Id.*)

In addition, Brookside's citation to Caris's conversation with Optum to discuss Brookside is irrelevant and does not establish a dispute of fact. Having a conversation with Optum about Brookside does not establish that Caris shared "confidential information" with Optum. At the time of this conversation, Optum was already aware of Brookside, and Brookside had already had communications with Optum. The Court should reject Brookside's improper attempt to insert

additional allegations and arguments into its response.  *See Brown*, 2009 WL 10668309, at *7 n.15.

70.    Beginning in late December 2016/early 2017, Caris communicated with Optum's competitors regarding the different pricing structures that they had been offering in their agreements as a means of educating itself and possibly switching to another PBM.  (Exhibit 1 to DMSJ, McRae Depo. at 64:11-65:24; Exhibit 7 to DMSJ, Saylor Depo. at 157:21-158:16.)

**Plaintiff's Response:** Plaintiff disputes paragraph 70 as this fact is unsupported by the evidence and a mischaracterization of the testimony. Caris began "researching" after the November 2, 2016 presentation from Brookside, and at the specific direction of its CEO McRae. In an email dated November 30, 2016, ***after Brookside shared with Caris employees its analysis of how Caris could obtain significant cost savings***, Caris CEO McRae directed Saylor to seek out information from other pharmacy benefit managers on pharmacy cost. McRae Dep. at 64:11-13 and 131:13-23, and email dated November 30, 2016 from McRae to Saylor and Ledgerwood attached to the PMPSJ as Exhibit M. Further, McRae email on November 30, 2016 he had no intention to switch PBMs. Id.

**Defendant's Reply:** This fact is undisputed.  Brookside admitted this fact in its Response to Statement 82 of Brookside's Statement of Undisputed Material Facts.

(*See* Doc. 137-2 at p. 74.)  Brookside cannot now claim this fact is undisputed. Moreover, Brookside's objections do not create a dispute of fact, are a mischaracterization of the evidence, and are irrelevant to Statement 70.  Mr. Saylor testified that he began to get involved and research Caris's PBM agreement in "Q4 of 2016" because he was transitioning to take over Mr. McRae's role as president and CEO.  (Exhibit 7, Saylor Depo. at 48:1-11.)  The fact that Mr. McRae encouraged Mr. Saylor and Ms. Ledgerwood to research PBM agreements in the industry after the November 2, 2016 presentation does not establish that Caris was not conducting other research before the November 2, 2016 presentation.

71.    Caris has never shared anything about Brookside's opinions with Optum's competitors.  There is no evidence revealing that Caris shared any of Brookside's alleged confidential information with Optum's competitors.

**Plaintiff's Response:** Undisputed but not a material fact, as Caris did share and use the Confidential Information to obtain a better contract from Optum.

**Defendant's Reply:** This fact is undisputed.  Brookside provides no justification for its objection to the materiality of the fact, which is material insofar as it shows that Caris did not violate the NDA.  Brookside does not cite to any evidence in the record to support its additional allegation, which the Court should reject as an improper attempt to insert additional allegations into its response.  *See Brown*, 2009 WL

10668309, at *7 n.15.   Moreover, as fully explained in Caris's Opposition to Brookside's Motion for Partial Summary Judgment and in Caris's Motion for Summary Judgment, Caris did not share or use "confidential information" in violation of the NDA.  (*See* Doc. 114, 26-28; Doc. 124.)

72.     Brookside asked Caris to participate in a third telephone conference. (Exhibit 54 to OPMPSJ, at PB-BROOK000105.)  Caris and Brookside agreed to speak again on December 20, 2016.  (Exhibit 56 to OPMPSJ, at PB-BROOK000113-14; Exhibit 57 to OPMPSJ, at CARIS001338-40.)

**Plaintiff's Response:** Undisputed.

**Defendant's Reply:** This fact is undisputed.

73.     On December 20, 2016, Brookside made its third, and final, oral presentation of the free consulting.  Once again, Brookside's oral presentation was unintelligible.  Once again, Caris's only takeaway from this call was that Brookside believed that the 2014 Agreement between Caris and Optum was a bad contract. (Exhibit 1 to DMSJ, McRae Depo. at 114:11-12; Exhibit 7 to DMSJ, Saylor Depo. at 61:3-9, 169:11-16.)

**Plaintiff's Response:** Plaintiff disputes paragraph 73 of Defendant's Statement of Undisputed Material Facts. First, Brookside's proprietary and confidential information is not "alleged," but actual. Further, McRae testified that after

71

participating in presentations provided by Brookside, he never "went to our vendor with anything other than Brookside says you got caught with your hands in the cookie jar. And if that's IP, then, yes, that's what happened." McRae Depo. at 114:5-8. But McRae also advised Jim Benjamin that McRae contacted Optum to discuss Brookside's analysis. J. Benjamin Depo. at 19:13-6, 21:1-19 ("[…] and then told us a couple weeks later that he [McRae] was talking to Optum about pricing, that led me to believe that he shared our information with them."); McRae Dep. at 134:1 to 135:14. Further, on November 29, 2016, Norman McRae informed Brookside in an email that Caris had been negotiating directly with HospiScript, using the information that Brookside had provided, stating: "███████████████████ ████████████████████████████████" J. Benjamin Depo. at 19:10-17; 126:6-127:25; McRae Depo. at 132:15 to 133:18, 152:17 to 153:17. The email is attached to the PMPSJ as Exhibit G.

     After McRae advised ████████████████████████████ ████████████████, Caris continued to engage Brookside in a discussion of how to save money on pharmacy expenses, J. Benjamin Depo. at 150:1 to 152:10; Saylor Depo. at 137:22 to 139:1, including an email dated December 20, 2016 in which Saylor wrote to McRae and Ledgerwood referencing a call with Brookside scheduled for that day: "████████████████████████████████



”). The email is attached to the PMPSJ as Exhibit H. Then, on December 20, 2016, Jim Benjamin, McRae, Saylor and Ledgerwood had another telephone conference, during which specifics of how Brookside would save Caris money by renegotiating Caris's contract with Optum were discussed. J. Benjamin Depo. 150:11 to 152:10 Additionally, Optum knew what Brookside did for hospice clients, and Optum knew Brookside was hired by Caris. Swider Depo, at 18:4-19:19 Triftshauser Depo. at 19:10-24. On January 20, 2017 Laurie Guay of Optum emailed Paul Saylor:



Saylor forward Guay's email to Norman McRae, telling him:

Within 30 minutes McRae responded:

Saylor Depo. at 189:19-25, Exhibit 20.

**Defendant's Reply:** This fact is undisputed.  Brookside's first objection to the term "alleged" is irrelevant, as Statement 73 does not mention Brookside's alleged proprietary and confidential information.  Brookside's contention that Mr. McRae "advised Jim Benjamin that McRae contacted Optum to discuss Brookside's analysis" is a mischaracterization of the evidence.  James Benjamin's testimony refers to Mr. McRae's November 29, 2016 email, where Mr. McRae states Caris is "investigat[ing] our contract with [O]ptum" and "waiting on [Optum] to get info on the amount of consulting services to us" – not Brookside's analysis.  (Exhibit 52 at CARIS0001409.)   Moreover, James Benjamin's testimony mischaracterizes Mr. McRae's emails to Brookside and shows that Brookside was merely speculating that Caris shared Brookside's "confidential information" with Optum.  (Exhibit 71, J. Benjamin Depo. at 21:17-29 ("[T]hat led me to believe that he shared our information . . . .").)  Not only does James Benjamin mischaracterize the November 29, 2016 email, Brookside also mischaracterizes this evidence, and the Court should reject Brookside's description of the November 29, 2016 email.

Brookside also mischaracterizes Optum's knowledge and makes statements that are directly refuted by the evidence in the record.  Specifically, Brookside was never hired by Caris (Exhibit 1 to DMSJ, McRae Depo. at 61:19-62:3, 120:10-14;

see Exhibit 35 to DMSJ, at PB-BROOK000039), several employees who worked on the Caris account did not know what Brookside did as a consultant, (Exhibit 70, Excerpts from Kimbrel's Depo. at 30:17-31:6; Exhibit 73, Guay Depo. at 57:22-25), and Optum did not know what Caris's engagement was with Brookside (Exhibit 73, Guay Depo. at 112:13-20.)  Moreover, as fully explained in Caris's Opposition to Brookside's Motion for Partial Summary Judgment, Caris only continued to speak with Brookside after the November 2, 2016 presentation because Brookside repeatedly contacted Mr. McRae and requested to speak with Caris.  (Doc. 124 at 26-31.)

Brookside's response is merely an attempt to insert additional allegations and arguments into its response.  The Court should reject Brookside's improper attempt to insert additional allegations and arguments into its response.  *See Brown*, 2009 WL 10668309, at *7 n.15.

74.    Brookside asked Caris for an opportunity to make a fourth free consulting presentation.  (Exhibit 67 to OPMPSJ, at PB-BROOK000154-55.)  Caris did not accept Brookside's request for a fourth presentation.  (*Id*. at PB-BROOK000154.)

**Plaintiff's Response:** Plaintiff disputes Paragraph 74 as the statement is not supported by the record citations.

**Defendant's Reply:** This is undisputed.  On January 10, 2017, Brookside contacted Caris again to inquire whether Norman McRae wanted to "schedule a call," and on January 11, 2017, Mr. McRae responded and did not accept Peter Benjamin's request for a call.  (Exhibit 67 at PB-BROOK000154-55.)

75.    Caris did not use any of Brookside's alleged proprietary or confidential information to renegotiate its contract with Optum.  (Exhibit 1 to DMSJ, McRae Depo. at 64:3-65:1; Exhibit 7 to DMSJ, Saylor Depo. at 170:1-23.)

**Plaintiff's Response:** Plaintiff disputes paragraph 75 of Defendant's Statement of Undisputed Material Facts. First, Brookside's proprietary and confidential information is not "alleged," but actual. Further, McRae testified that after participating in presentations provided by Brookside, he never "went to our vendor with anything other than Brookside says you got caught with your hands in the cookie jar. And if that's IP, then, yes, that's what happened." McRae Depo. at 114:5-8. But McRae also advised Jim Benjamin that McRae contacted Optum to discuss Brookside's analysis. J. Benjamin Depo. at 19:13-6, 21:1-19 ("[…] and then told us a couple weeks later that he [McRae] was talking to Optum about pricing, that led me to believe that he shared our information with them."); McRae Dep. at 134:1 to 135:14. Further, on November 29, 2016, Norman McRae informed Brookside in an email that Caris had been negotiating directly with HospiScript, using the

information that Brookside had provided, stating: "Thank you for starting conversations – don't know where we will end up." J. Benjamin Depo. at 19:10-17; 126:6-127:25; McRae Depo. at 132:15 to 133:18, 152:17 to 153:17. The email is attached to the PMPSJ as Exhibit G.

Also, in an email dated November 14, 2016, McRae wrote to Carna Triftshauser, an Optum employee, "███████████████████████████████ ███████████████████████████████████████████████" The email is attached to this Response as Exhibit D (CARIS046243) (Ex. 2 to Triftshauser Depo). In response to this email, Ms. Triftshauser sent out a calendar invitation for a conference call to McRae, Ledgerwood, Laurie Guay, Jason Kimbrel and Natalie Swider, and in the invitation was the phrase "this call is to discuss Brookside." This call was set up for November 16 at 4 p.m. Triftshauser Depo. 22:10-24; Ex. 3 (CARIS 046255), attached hereto as Exhibit E. Triftshauser testified that Jason Kimbrel was specifically invited to attend. Id. Subsequent to the November 16th meeting with Optum's representatives, and in reply to Peter Benjamin's mail, McRae wrote on November 30, 2016. The email is contained in a string of emails, Exhibit G to Plaintiff's Motion for Partial Summary Judgment, [Doc. 103-12] (CARIS045551 to 45554), and states in part:

███████████████████████████████████████████



(Emphasis added). McRae Depo. at 132, Exhibit 16.

After McRae advised ████████████████████████████████████

██████████████████, Caris continued to engage Brookside in a discussion of how

to save money on pharmacy expenses, J. Benjamin Depo. at 150:1 to 152:10; Saylor

Depo. at 137:22 to 139:1, including an email dated December 20, 2016 in which

Saylor wrote to McRae and Ledgerwood referencing a call with Brookside

scheduled for that day: "████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

"). The email is attached to the PMPSJ as Exhibit H. Then, on December 20, 2016, Jim Benjamin, McRae, Saylor and Ledgerwood had another telephone conference, during which specifics of how Brookside would save Caris money by renegotiating Caris's contract with Optum were discussed. J. Benjamin Depo. 150:11 to 152:10 Additionally, Optum knew what Brookside did for hospice clients, and Optum knew Brookside was hired by Caris. Swider Depo, at 18:4-19:19 Triftshauser Depo. at 19:10-24. On January 20, 2017 Laurie Guay of Optum emailed Paul Saylor:



Saylor forward Guay's email to Norman McRae, telling him:



Within 30 minutes McRae responded:



Saylor Depo. at 189:19-25, Exhibit 20

**Defendant's Reply:** This fact is undisputed.  Brookside's first objection to the term

"alleged" is irrelevant.  Caris used the term "alleged" because it disputes that this information is Brookside's "confidential and proprietary information," and Brookside has failed to present evidence establishing this information is Brookside's "confidential and proprietary information."  Nonetheless, Brookside cannot point to any evidence that reveals Caris used any "confidential information."  Brookside's contention that the hand in the cookie jar comment is "confidential information" is incorrect.  As fully explained in Caris's Opposition to Brookside's Motion for Partial Summary Judgment, Brookside's expression of its opinion that Optum was overcharging Caris does not fall within the NDA's definition of "confidential." (Doc. 124 at p. 34-36.)

Brookside's contention that Mr. McRae "advised Jim Benjamin that McRae contacted Optum to discuss Brookside's analysis" is a mischaracterization of the evidence.  James Benjamin testimony refers to Mr. McRae's November 29, 2016 email, where Mr. McRae states Caris is "investigat[ing] our contract with [O]ptum" and "waiting on [Optum] to get info on the amount of consulting services to us" – not Brookside's analysis.  (Exhibit 52 at CARIS0001409.)  Moreover, James Benjamin's testimony mischaracterizes Mr. McRae's emails to Brookside and shows that Brookside was merely speculating that Caris shared Brookside's "confidential information" with Optum.  (Exhibit 71, J. Benjamin Depo. at 21:17-29

("[T]hat led me to believe that he shared our information . . . .").)  Not only does James Benjamin mischaracterize the November 29, 2016 email, Brookside also mischaracterizes this evidence, and the Court should reject Brookside's description of the November 29, 2016 email.

In addition, Brookside's citation to Caris's conversation with Optum to discuss Brookside is irrelevant and does not establish a dispute of fact.  Having a conversation with Optum about Brookside does not establish that Caris shared "confidential information" with Optum.  At the time of this conversation, Optum was already aware of Brookside, and Brookside had already had communications with Optum.  The Court should reject Brookside's improper attempt to insert additional allegations and arguments into its response.  *See Brown*, 2009 WL 10668309, at *7 n.15.

Brookside also mischaracterizes Optum's knowledge and makes statements that are directly refuted by the evidence in the record.  Specifically, Brookside was never hired by Caris (Exhibit 1 McRae Depo. at 61:19-62:3, 120:10-14; see Exhibit 35 at PB-BROOK000039), several employees who worked on the Caris account did not know what Brookside did as a consultant, (Exhibit 70, Excerpts from Kimbrel's Depo. at 30:17-31:6; Exhibit 73, Guay Depo. at 57:22-25), and Optum did not know what Caris's engagement was with Brookside (Exhibit 73, Guay Depo. at 112:13-

20.)  Moreover, as fully explained in Caris's Opposition to Brookside's Motion for

Partial Summary Judgment, Caris only continued to speak with Brookside after the

November 2, 2016 presentation because Brookside repeatedly contacted Mr. McRae

and requested to speak with Caris.  (Doc. 124 at 26-31.)

Brookside's response is merely an attempt to insert additional allegations and

arguments into its response.   The Court should reject Brookside's improper attempt

to insert additional allegations and arguments into its response.  *See Brown*, 2009

WL 10668309, at *7 n.15.

Respectfully submitted, this 22nd day of September, 2020.

/s/ *Keith J. Barnett*
Keith J. Barnett
Georgia Bar No. 142340
Chelsea Lamb
Georgia Bar No. 542879
TROUTMAN PEPPER HAMILTON
SANDERS LLP
600 Peachtree Street NE
Suite 3000
Atlanta, GA 30308
Telephone: (404)-885-3000
Facsimile: (404)-885-3900
keith.barnett@troutman.com
chelsea.lamb@troutman.com

*Counsel for Defendant*

## <u>LOCAL RULE 5.1(C) CERTIFICATION</u>

Counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font, in compliance with Local Rule 5.1(C).

This 22nd day of September, 2020.

/s/ *Keith J. Barnett*
Keith J. Barnett
Georgia Bar No. 142340

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been served on Plaintiff's counsel via the Court's CM/ECF system.

This 22nd day of September, 2020.

/s/ *Keith J. Barnett*
Keith J. Barnett
Georgia Bar No. 142340